AMERICAN HOSPITAL ASSOCIATION, a non-profit corporation, Group Hospital Service, Inc., a non-profit corporation, Group Life & Health Insurance Company, a corporation, Group Medical & Surgical Service, a corporation, Plaintiffs,

v.

BANKERS COMMERCIAL LIFE INSURANCE COMPANY, a corporation and Great United Life Insurance Company, a corporation, John Abdnor, an individual, Defendants.

Civ. A. No. 3–1652.

United States District Court
N. D. Texas,
Dallas Division.

Sept. 18, 1967.

Otis B. Gary, Dallas, Tex., James L. Kurtz, Washington, D. C., for plaintiffs.

G. H. Kelsoe, Jr., Dallas, Tex., for defendants.

HUGHES, District Judge.

### FINDINGS OF FACT

1. The marks Blue Cross Plan, Blue Cross and Blue Shield Plan were registered in the U. S. Patent Office by American Hospital Association, Chicago, Illinois, and National Association of Blue Shield Plans, respectively, on February 5, 1952 and on April 1, 1952.

2. The mark Blue Cross was registered by Group Hospital Service in the Texas Secretary of State's Office on September 13, 1944; by American Hospital Association on November 12, 1964.

3. The mark Blue Shield was registered by Group Medical and Surgical Service, Inc., in the Texas Secretary of State's Office on July 20, 1949.

4. The mark Blue Cross-Blue Shield of Texas was registered in the Texas Secretary of State's Office by Group Medical and Surgical Service, Inc. on May 8, 1964.

5. The mark Blue Shield was registered in the Texas Secretary of State's Office by Group Medical and Surgical Service, Inc. on May 31, 1962.

6. A second mark Blue Shield was registered in the Texas Secretary of State's Office by Group Medical and Surgical Service, Inc. on June 11, 1962.

7. Defendants, Bankers Commercial Life Insurance Company and Great United Life Insurance Company, are insurance companies which issue life, health, and hospital policies with a mark "Blue Crown", consisting of the words "Blue Crown" and a picture of a blue crown, with the company name on the front of each policy.

8. Defendants have policy holders outside the State of Texas, receive premiums from such holders, and pay benefits to them. They advertise in newspapers where circulation extends outside the State of Texas and on television stations which have coverage outside the State.

The mark Blue Crown is displayed on all newspaper advertising, on drop cards, in the telephone books, and on display signs.

9. Plaintiffs sell life, hospital, and health insurance to groups and individuals. American Hospital Association is an Illinois corporation. The other three Plaintiffs are organized under the laws of Texas.

10. The marks Blue Shield and Blue Cross are used nationally by insurance companies which are members of the National Association of Blue Shield Plans or of the American Hospital Association. Plaintiffs and other members of the American Hospital Association and the National Association of Blue Shield Plan advertise extensively on a national and local basis with the marks Blue Cross and Blue Shield prominently displayed in said ads.

11. The services of Plaintiffs and Defendants are substantially the same. Both issue life, health, and hospital insurance to individuals.

12. The Texas Secretary of State granted Defendants a service mark registration for Blue Crown on March 23, 1960.

13. The Board of Insurance marked an approval on the policy of Defendants. Such approval was of the form of the policy and was not of Defendants' mark "Blue Crown".

14. Defendants were given notice of claimed infringement in July 1962. Suit was filed in September 1966. There is no evidence of harm to the Defendants in the delay of Plaintiffs to file suit.

15. A random survey of people in Dallas and Fort Worth revealed that when shown the mark "Blue Crown", 42.4% of the individuals indicated the trademark suggested a connection with Blue Cross, Blue Shield or Blue Cross-Blue Shield.

16. The crown, shield, and cross are all symbols of heraldry. The color used in connection with each of these symbols by Plaintiffs and Defendants is blue.

17. A purchaser of one of Defendants' Blue Crown policies having an indefinite recollection of the details of Plaintiffs' marks might be likely to believe he is buying one of the Blue Cross-Blue Shield policies.

18. The similarity of the insignia and color of the marks of Plaintiffs and Defendants might make the purchaser of Defendants' Blue Crown policy think that the Blue Crown insurance was a modification of the Blue Cross-Blue Shield insurance of which he had heard.

19. There is evidence to indicate that the president of Defendant-companies deliberately chose the mark Blue Crown with the intent of deriving benefit from it.

20. The president of Defendant-companies, having knowledge of Blue Cross-Blue Shield companies and having previously owned one of their policies, may possibly have intentionally chosen the mark Blue Crown to confuse and deceive the public and thereby trade on the good will established by Plaintiffs' well known service marks.

## CONCLUSIONS OF LAW

1. The activities of the Defendant-companies amount to interstate commerce and are sufficient to invoke the Lanham Act. See United States v. South-Eastern Underwriters Association et al., 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); Pure Foods v. Minute Maid Corp., 214 F.2d 792 (5th Cir. 1954).

2. The actions of the Texas Secretary. of State in granting a service mark registration for Blue Crown is not binding on this Court.

3. There is no provision in the Insurance Code of Texas for the Board of Insurance to approve a mark. Any such provision would not be binding on this Court.

4. Mere delay in bringing suit ordinarily does not affect the right to an injunction against further use of an infringed trademark. Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609 (7th Cir. 1965); Seven-Up Co. v. O-So-Grape Co., 283 F.2d 103 (7th Cir. 1960).

5. The delay in filing suit by Plaintiffs was not so prolonged and inexcusable that it would be inequitable to permit Plaintiffs to seek injunctive relief as to future activities. Prejudice to party asserting laches must constitute more than expenditures in promoting same. Tisch Hotels, Inc. v. Americana Inn, Inc., supra.

6. The Cross, Shield, and Crown all being used in heraldry give a similar impression to the viewer, and with the color blue, tend to confuse the ordinary purchaser of insurance. See National Association of Blue Shield Plans and Group Medical & Surgical Service v. United Bankers Life Insurance Company, 362 F.2d 374 (5th Cir. 1966).

7. The mark Blue Crown of Defendant-companies is such an ingenious imita-

tion of Plaintiffs' marks Blue Cross and Blue Shield as to be calculated to deceive ordinary persons. See Coca-Cola Co. v. Cleo Syrup Corp., D.C., 48 F.Supp. 567.

8. Blue Crown being a colorable imitation of Blue Cross-Blue Shield used in connection with the advertising of policies of the Defendant-companies is likely to cause confusion with the policies issued by Plaintiff-companies.

9. The Court is not restricted to a visual comparison of the marks, nor to the testimony of witnesses questioned with regard to exhibits placed in front of them, and with the names of Defendants' companies prominently displayed on the exhibits. Frostie Co. v. Dr. Pepper Co., 341 F.2d 363 (5th Cir. 1965); American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619 (5th Cir. 1963).

10. The decision of Defendants' President to use the mark Blue Crown being deliberate and the possibility of his intention being to appropriate the good will and good name of Blue Cross-Blue Shield, such decision is a circumstance to consider in determining the likelihood of confusion. National Association of Blue Shield Plans and Group Medical & Surgical Service v. United Bankers Life Insurance Co., supra; Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir. 1963) cert. denied 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053.) Good faith by a knowing use of an established mark is not a defense. Abramson v. Coro., Inc., 240 F.2d 854 (5th Cir. 1957).

11. The likelihood of confusion is made from the viewpoint of the ordinary purchaser and depends on all circumstances, including his recollection of what he has heard and read. Standard Oil Company (Kentucky) v. Humble Oil & Refining Company, 363 F.2d 945 (5th Cir. 1966); Avrick et al. v. Rockmont Envelope Company, 155 F.2d 568 (10th Cir. 1946).

12. Defendants' action in using Blue Crown on its policies is an infringement of the Blue Cross-Blue Shield marks of Plaintiffs and a violation of the provisions of the Lanham Act 15 U.S.C.A. Sec. 1114(1) (a) and of the Texas Trademark laws. Tex.Civ.Stat., Title 23, Art. 851–C.

13. Plaintiffs are entitled to an injunction against the use by Defendants of the mark Blue Crown.