**NATIONAL ASSOCIATION OF BLUE SHIELD PLANS, a nonprofit corporation, Plaintiff,**

v.

**Mary LOVELACE, an Individual, doing business as Blue Care, Defendant.**

Civ. A. No. C–76–2446–CBR.

United States District Court, N. D. California.

July 6, 1977.

**116**

Melville Owen, Thomas M. Freiburger, Owen, Wickersham & Erickson, San Francisco, Cal., for plaintiff.

Thomas M. Di Franco, Law Offices of Quentin L. Kopp, San Francisco, Cal., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

RENFREW, District Judge.

The above-entitled action was tried to the Court on May 23, 1977, with Melville Owen of the law firm of Owen, Wickersham & Erickson appearing as counsel for plaintiff and Thomas M. Di Franco of the law offices of Quentin L. Kopp appearing as counsel for defendant. Evidence having been taken, argument having been heard and considered, and the parties having submitted proposed findings of fact and conclusions of law, the Court now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The Jointly Stipulated Facts filed on May 16, 1977, and attached hereto as Exhibit A are adopted and incorporated herein as though fully set forth.

2. Because of the fame and goodwill which the word "Blue" has gained through the efforts of plaintiff and of Blue Cross Association, defendant's use of the word "Blue" in connection with health care services is likely to cause confusion between her services and organization and those of Blue Shield.

3. The likelihood of confusion is evidenced by the identical Yellow Pages classification of the two organizations, by the fact that defendant's services directly involve Blue Shield in many instances, and by defendant's mailer application wherein the names "Blue Care," "Blue Cross" and "Blue Shield" all appear on the same page.

4. The likelihood of confusion is strongest in California where defendant's services are primarily offered and where plaintiff's local Blue Shield plan has offered since March 1974 a senior health care plan known as "Coronet Senior." Such confusion is also more likely among the elderly who comprise substantially all of defendant's clientele.

5. The prepayment "membership" type structure of Blue Care is similar to the way plaintiff's plans operate, further adding to the likelihood that the public will confuse Blue Care with Blue Shield.

6. A significant portion of the public is likely to confuse Blue Care's services with those of Blue Shield and will believe that Blue Care's services are somehow associated with, endorsed and/or sponsored by plaintiff Blue Shield.

From the foregoing Findings of Fact, the Court makes the following Conclusions of Law.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1332, and 28 U.S.C. § 1338.

2. Venue is proper in this district.

3. Plaintiff's certificates of federal registration provide prima facie evidence of the validity of plaintiff's four registered Blue Shield service marks.

4. Plaintiff's Blue Shield mark is a famous and strong mark, and therefore entitled to broad protection.

5. Plaintiff's Blue Shield service mark has been infringed if there is a "likelihood of confusion" caused by the similarity of defendant's Blue Care name and mark to plaintiff's mark.

6. Since plaintiff and defendant offer closely related services, both in the health care field, the similarity of service marks need not be as great to prove confusion as would be required were the services offered completely separate and unrelated.

7. Under the facts of this case, as a matter of law, there is a clear likelihood of confusion between Blue Care and Blue Shield. Members of the public are likely to confuse defendant Blue Care's services with those of Blue Shield, and to believe that Blue Care's services are in some way associated with, endorsed by and/or sponsored by plaintiff Blue Shield.

8. Defendant's use of the name and mark Blue Care is diluting the value of plaintiff's name and mark Blue Shield and the goodwill associated therewith.

9. Plaintiff's registered service marks have been infringed by defendant's use of Blue Care, and plaintiff is entitled to the injunction prayed for.

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED that:

1. Defendant Mary Lovelace, and her agents, employees, representatives and attorneys and all other persons in active concert or participation with her be and they hereby are permanently enjoined and restrained from using the designation Blue Care or the word Blue or any other designation confusingly similar to Blue Shield, alone or in combination with other words or with graphic symbols or logotypes, to market, advertise or identify the defendant's services in the medical and health care field, or otherwise causing likelihood of confusion, injury to plaintiff's business reputation, or dilution of the distinctiveness of plaintiff's marks.

2. Defendant be required to destroy all literature, advertising and other material bearing the infringing designations.

3. Defendant be required to request of the telephone company that her business listings be changed in the next printing of each and every directory where the name Blue Care has appeared, including both white and Yellow Pages, and to notify the San Francisco Chamber of Commerce of the change of name.

4. Defendant be required to file a written statement of abandonment in the United States Patent and Trademark Office of federal service mark application Serial No. 91,054 for Blue Care under Rule 2.68 of the Trademark Rules of Practice.

5. Defendant be required to file with this Court and serve upon plaintiff within thirty (30) days from the date of this order, a report in writing under oath, setting forth in detail the manner and form in which the defendant has complied with this order.

IT IS HEREBY FURTHER ORDERED that judgment shall be entered in favor of plaintiff with the parties to bear their respective costs of suit herein.

IT IS HEREBY FURTHER ORDERED that counsel for plaintiff shall promptly prepare an appropriate form of judgment, obtain approval of counsel for defendant as to form, and submit it to the Court for execution.

## EXHIBIT A

### JOINTLY STIPULATED FACTS

1. The court's jurisdiction over this action is proper, being based on the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

2. Plaintiff, National Association of Blue Shield Plans, a nonprofit Illinois corporation, is an association of companies ("Plans") which provide medical-surgical-

health care on a prepayment basis to enrollees.

3. The BLUE SHIELD service marks and registrations therefor are valid and owned by plaintiff.

4. As of January 1977, there were 70 local Blue Shield Plans operating in 48 of the 50 states, the District of Columbia and Puerto Rico. In the period from the end of 1946, until 1976, Blue Shield grew from 1,826,719 members to 72,644,286. In addition, another over 13,000,000 are served by Blue Shield Plans under government programs, for a total of 86,275,853 served, representing over 39% of the total population of the United States and Puerto Rico. For the year 1975, the Blue Shield Plans paid out 7.3 billion dollars for doctor bills. This figure represented 96.75% of the total paid into the Plans in that year by those protected. The remaining funds were applied to operating costs and to a reserve fund, to the extent that each Plan had a net income.

5. In California, by 1976 there were 4.3 million persons served by Blue Shield of California, the local Plan, including under government programs. This represented 20.5% of the total California population.

6. The BLUE SHIELD mark, used by each of plaintiff's local Plans, serves to identify the Plans for the public as being a member of plaintiff, offering a prepaid health plan which is doctor-sponsored and nonprofit.

7. Plaintiff and its local Plans have advertised under the BLUE SHIELD mark. The advertising budget of plaintiff alone, excluding expenditures of its local Plans, for the fiscal year ending June 30, 1977 stands at $1,153,000.00. Currently plaintiff is advertising in *Reader's Digest, Ebony, Time, Newsweek, U.S. News and World Report* and *Sports Illustrated.* The BLUE SHIELD service is also advertised by plaintiff on network television. A number of health-educational pamphlets bearing the BLUE SHIELD mark have been distributed to the public by plaintiff.

8. Plaintiff's local Plans have also engaged in advertising under the BLUE SHIELD mark.

9. In California, where nearly all of the defendant's operations have thus far taken place, plaintiff's local Blue Shield Plan has been offering since March 1974, a senior citizens' health care plan known as "Coronet Senior".

10. Blue Shield and Blue Cross have been referred to collectively as "The Blues".

11. Defendant Mary Lovelace began her Blue Care service, which assists clients or members with their medical care claims, subsequent to plaintiff's use of the BLUE SHIELD mark. Her operations thus far have been almost entirely limited to California.

12. Both Blue Shield and Blue Care have been listed in San Francisco area telephone directories under "Medical Service Organizations". Blue Care has also been listed with the San Francisco Chamber of Commerce under this heading.

13. Presently Blue Care has approximately 50 clients or members, of which many are nonpaying "honorary" members.

14. Defendant, Mary Lovelace doing business as "Blue Care" (hereinafter "Blue Care") is a sole proprietorship engaged since 1975 in the business of preparing and submitting claims for medical patients under Medicare and health insurance. Blue Care's services are directed primarily to the elderly, but are available to anyone desiring to use the service, such as M.D.s who process Medicare and health insurance claims for their patients.

15. Defendant's services cause her to process Medicare claims and health insurance claims. The latter claims may include but are not limited to Blue Shield or Blue Cross.

16. Mrs. Lovelace presently operates her Blue Care service on a prepayment, membership basis. Clients desiring her services pay an annual membership of $50.00 as prepayment for a year of Blue Care services.

17. Mrs. Lovelace has advertised by sending out mailers entitled "Blue Care and You" which describe her Blue Care services

and solicit memberships, and also by listing the services in local telephone directories and with the San Francisco Chamber of Commerce.

18. Defendant was aware of the BLUE SHIELD mark and the services which it represents before she began her Blue Care business.

19. All of plaintiff's registered service marks predate defendant's application for registration of the mark and words "Blue Care", said application being dated June 18, 1976.

20. On or about October 4, 1976, a trademark examiner in the United States Patent and Trademark Office in a standard response to plaintiff's service mark application advised defendant that, "A search of the Office records fails to show that the mark when applied to applicant's goods and/or services, so resembles any registered mark as to be likely to cause confusion, or to cause mistake, or to deceive. TMEP Section 1105.01".

21. On or about December 21, 1976, defendant's mark was published in the *Official Gazette* and the 30 day opposition period began. Plaintiff has filed opposition.

22. As shown in defendant's Exhibit J. Rose Mary Machado, Trademark Examiner for the Office of the Secretary of State of the State of California, sent her form letter Sec/State TM 124 to defendant's counsel which stated in part:

"Subject mark does not appear to consist of or comprise a mark which so resembles a mark registered in this state or a mark or trade name previously used in this state by another and not abandoned, as to be likely, when applied to the goods or services of the applicant, to cause confusion or mistake or to deceive.

Therefore, it appears to be registrable; however, the registrability of the mark will depend on the use as shown by the application and specimens or facsimiles."

23. The table below comprises a list of uses by other organizations of names and/or marks including the word BLUE as the first word thereof. In each case the use of the name and/or mark commenced after plaintiff's first use of its BLUE SHIELD mark and in each case an objection to the use was raised by plaintiff. In some cases, as noted, a lawsuit was necessary to stop the BLUE use, but in all cases the use of the word BLUE was discontinued after plaintiff's objection.

| MARK | SERVICES | USER |
| --- | --- | --- |
| BLUE CREST | Medical Insurance Plan | Reliance Mutual Life Insurance Company of Illinois |
| BLUE CIRCLE | Medical Insurance | Oklahoma Mutual Casualty Insurance Co., assignor to Globe Life and Accident Insurance Company * |
| BLUE STAR | Medical Insurance | LaSalle Casualty Company ** |
| BLUE SEAL (5 Uses) | Medical Insurance Plan | (1) National Life Insurance Co. |
| | | (2) Continental Casualty Co. |
| | | (3) American Farmers Insurance Co. |
| | | (4) American Income Life Insurance Co. |
| | | (5) National Bankers Life Insurance Co.*** |

\* Opp. No. 31,824 in U.S. Patent Office
\*\* Opp. No. 32,230 in U.S. Patent Office
\*\*\* *Blue Shield Medical Care Plans v. National Bankers Life Ins. Co.*, U.S. Dist. Court, W.D. Tx. Austin Div., C.A. No. 746. Tried and concluded by consent decree and injunction.

| MARK | SERVICES | USER |
|------|----------|------|
| BLUE RIBBON | Medical Insurance Plan | Bankers Health & Accident Co.**** |
| BLUE TORCH | Health Consultation Service | General Health Information Services, Inc. |
| BLUE PLAN | Medical Insurance Plan | Daughters of The American Revolution Sentry Insurance Co. |
| BLUE SCALE OF CALIFORNIA | Prepaid Legal and Professional Insurance | Blue Scale of California, Inc. |

**** Opposition No. 42,021 in U.S. Patent Office

24. In addition to the BLUE names and/or marks listed above, to which plaintiff objected, the following uses of BLUE were objected to by the Blue Cross Association. In both cases the user discontinued the use of BLUE after the objection, one case requiring a lawsuit as noted.

| MARK | SERVICES | USER |
|------|----------|------|
| BLUE PLUS 100 | Medical Insurance Plan | Phoenix Mutual Life Insurance Co. |
| BLUE CROWN | Medical Insurance Plan | Bankers Commercial Life Ins. Co.* |

* *American Hospital Assn.* (now Blue Cross Assn.) *v. Bankers Commercial Life Ins. Co.,* 275 F.Supp. 563, 155 U.S.P.Q. 458 (N.D. Tex. 1967), aff'd per curiam 403 F.2d 718, 159 U.S.P.Q. 706 (5th Cir. 1968)—Mark found to infringe both BLUE CROSS and BLUE SHIELD marks.

25. Plaintiff's Exhibits 1 through 46 and 49 through 58 to be used at trial, are genuine and admissible at trial. Plaintiff's Exhibits 47 and 48 will be argued before the court.

26. Defendant's Exhibits A through N to be used at trial, are genuine and admissible at trial.

At a conference of counsel on May 13, 1977, the parties stipulated to the above facts. Counsel estimate they have spent approximately three hours in joint consultations to streamline the trial of this case and eliminate needless arguments on formalities.