**AMERICAN RICE, INC., Plaintiff,**

v.

**The ARKANSAS RICE GROWERS CO-OPERATIVE ASSOCIATION, d/b/a Riceland Foods, Defendant.**

Civ. A. No. G–81–308.

United States District Court,
S. D. Texas,
Galveston Division.

March 2, 1982.

**1380**

Paul L. DeVerter, II, and Larry Jones, Fulbright & Jaworski, Houston, Tex., for plaintiff.

James L. Kurtz, Washington, D. C., George D. Martin, Martin, Carmona, Cruse, Micks & Dunten, Galveston, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

HUGH GIBSON, District Judge.

### I.

This action which came on for hearing on February 5, 1982, was instituted by plaintiff American Rice, Inc. (ARI) against defendant the Arkansas Rice Growers Cooperative Association (Riceland) because of Riceland's alleged practices of unfair competition and trademark infringement claimed as causes of action under common law and under federal law (See § 32 and § 43 of the Lanham Act, 15 U.S.C. § 1114(1) and § 1125(a)). Plaintiff also alleged that defendant committed a deceptive trade practice in violation of the Texas Deceptive Trade Practice Act. Tex.Bus. & Comm. Code Ann. §§ 17.41–.62 (Vernon Supp. 1980–81). Plaintiff seeks a preliminary and a permanent injunction against defendant, an accounting of the profits defendant made from the allegedly infringing trademarks, and all damages sustained by plaintiff due to the alleged infringement and acts of unfair competition. The February 5th hearing concerned only the appropriateness of a preliminary injunction. Upon review of the records, the parties' memoranda, and the applicable law, the Court is of the opinion that a preliminary injunction should be issued.

### II.

#### A. ARI

ARI is a cooperative of over 17,000 rice farmers in Texas, Louisiana and Arkansas. The cooperative processes and sells rice through various means and markets and returns the profits to its farmers. ARI sells its rice to American, foreign, and industrial customers. Its current sales to Saudi Arabia were estimated at over $100 million, and in 1981 ARI rice sales accounted for 73% of the Saudi Arabian market.[1]

ARI purchased Blue Ribbon Mills in 1975, and Blue Ribbon assigned its trademarks to ARI. Plaintiff's exhibit # 5. Included in those trademarks were "Blue Ribbon," "Chopstick," and "Abu Bint." Blue Ribbon had branded its rice packages and bags sent to Saudi Arabia with the "Abu Bint" trade name and accompanying mark of a girl design since 1966. See plaintiff's exhibit # 8. Since the takeover of Blue Ribbon in 1975, ARI has continued the usage of the Abu Bint mark and design in its sales to Saudi Arabia and other Arab countries.

ARI has two United States registrations for the girl design trademark. Plaintiff's exhibits # 1 & 2. These designs are of oriental-looking women, dressed in oriental-style clothing with a bowl of rice in one hand and chopsticks in the other. The amended version of the design shown in plaintiff's exhibit # 2 appears to be the one used on the current packaging of ARI rice in Saudi Arabia. The mark "Abu Bint" has been registered twice with the Texas Secretary of State—once with Roman lettering and once in the Arabic script. Plaintiff's exhibits # 3 & 4. Since 1966, these designs and the Abu Bint mark have been used in Saudi Arabia by Blue Ribbon and today ARI. Plaintiff's exhibits # 6, 7, 8 & 9.

The total presentation on the 100-pound ARI burlap bags is comprised of the following elements:

1) Arabic script at the top;

2) the words "chopstick" and "rice" in large oriental-style writing;

3) the girl design set in the middle, in between chopstick and rice;

4) the words "golden parboiled" set into the table of the girl design;

5) additional Arabic writing below "rice;"

---

1. According to Lee Adams, ARI's vice-president of marketing, the percentage was reported by the USDA during its last marketing year ending July 31, 1981.

6) the logo and full name of ARI are at the bottom in smaller, modern print;

7) the predominant colors are yellow, red and black;

8) the words "chopstick," "rice," and "golden" are in yellow in addition to the face, hands, and rice of the girl design;

9) the bottom Arabic script, the words "long grain" above the word "RICE" (in bold capital letters), and the girl's dress, part of her hand, and part of her face are colored the same red hue;

10) black colors the top Arabic script, the outline of "chopstick" and "rice," ARI's final line, and the hair and table of the design;

11) "parboiled" is the color of the burlap bag.

Plaintiff's exhibit # 6.

The bottom line of Arabic means "American Rice 100 pounds net weight." The top line of Arabic script, "Abu Bint," means, according to plaintiff's witnesses,[2] "of the girl" or, more aptly, "girl brand." "Bint," without contest, means girl. "Abu" apparently can have several meanings. Peter Petritis—who works for Alpha Trading Company, ARI's shipping agent in Saudi Arabia—testified that in its content, on the bag, "Abu" meant "of the." He testified that other brands of rice in Saudi Arabia similarly used "abu," for example, Abu Gamel, or camel brand. *See* plaintiff's exhibit # 46. In rebuttal, the defendant offered the testimony of an Arabic linguist who stated that "abu" means "father's." The Court observes that "abu" may have many meanings; one clearly is "father," and another is "of the." In the context of product labeling, as demonstrated by other Arabic rice labels, the Court is inclined to find that it means "of the" or "brand."

A large percentage of the Saudi Arabian population is illiterate in the Arabic language because only in recent times has compulsory education been instituted. Conse-

quently, the Saudi Arabian public, for the most part, distinguishes rice brands on the basis of the design on the package. The illiteracy rate and its consequences are the primary reasons that ARI's rice is referred to only as Abu Bint, and not Chopstick brand, as it might be in this country. The illiteracy rate also explains, in part, why ARI does not use media advertising.

Instead, ARI has relied on a number of promotional items to help it gain and retain brand recognition. ARI has used give-away items to promote Abu Bint sales: bumper stickers (plaintiff's exhibit # 30), sets of Cross pens, which have the girl design along with the Arabic script of Abu Bint (plaintiff's exhibit # 28); paper weights, which have the girl design along with Arabic script of Abu Bint (plaintiff's exhibit # 31); digital clock-calendars with the Arabic script of Abu Bint (plaintiff's exhibit # 32); and posters depicting the burlap bag design on a white background (plaintiff's exhibit # 33).

A large part of ARI sales occur in merchant "offices" in which Saudi Arabians chose among various samples, purchase their items, and pick them up there or in warehouses. In this process, rice is purchased in large quantities, 100- or 25-pound burlap bags. The large bags are convenient for the extended Saudi family, which often shares living quarters together, or for Bedouins who buy large amounts of food at one time. In addition, with the advent of western supermarkets, some ARI rice is also sold in smaller "poly" bags, in cartons, and in 25-pound burlap bags (which have the same design, marks, and colors as the 100-pound bags).

Due to earlier, unrelated problems with counterfeit Abu Bint bags, ARI began to attach identifying tabs to every 100-pound burlap bag; these tags have the same Abu Bint design, colors, and Arabic script. Plaintiff's exhibits # 25 & 26. Moreover, the rice itself contains paper discs identifying the goods as ARI rice. Plaintiff's exhibit # 27.

---

2. Lee Adams and Peter Petritis, general manager of trading and shipping for Alpha Trading Company, ARI's exclusive agent in Saudi Arabia.

ARI's exclusive agent in Saudi Arabia is Alpha Trading Company (Alpha), which operated as the selling arm of ARI there. ARI gave Alpha the right to represent ARI regarding its attempts to register its trademark under Saudi Arabian law. Plaintiff's exhibit # 18. However, ARI did not intend to transfer its title to the girl design marks to Alpha. The general manager of Alpha's trading and shipping, Peter Petritis, confirmed that Alpha does not own the girl design mark.

Alpha received the right to represent ARI's interest in the Saudi Arabian registration because of ARI's difficulty in registering its mark. ARI's attempt in 1972 to register the mark in the Saudi Arabian trademark office failed when an official rejected the application. ARI is presently endeavoring to have that decision overturned by a Saudi Arabian court. At least, ARI has registered its trademark with a quasi-governmental body, the Chamber of Commerce and Industry. This body apparently has greater clout and authority than the typical American chamber of commerce.

## B. RICELAND

Riceland is a cooperative similar to ARI and is contributed to by over 14,000 farmers. Riceland competes with ARI in the Saudi Arabian market. It sells rice in 100- and 25-pound bags through the same system of merchants used by ARI.

Originally Riceland used a lion design on its rice bags. Then in 1974 Riceland introduced its "two girl" brand, which is still in use today. Defendant's exhibit # 12. In the fall of 1978, Riceland began packaging "Bint al-Arab" brand. Riceland contends that it "owns" the mark here in this country, but claims that it only has the right to use the mark elsewhere because the mark's original and current owner is an Arabian merchant named Alamoudi. In effect, Riceland "private labels" its rice for Alamoudi's trade in Saudi Arabia.

The 1978 Bint al-Arab label consisted of the following:

1) Arabic script in black at the top.

2) A black outline seal encircles a girl design figure; bold face Arabic script is on the top curve of the seal and bold face black Roman lettering is on the bottom of the seal's circle;

3) The girl design has Arab facial features, yellow-colored skin, a green shawl covering her head and flowing in front of her body, and a black-shaded gown; her left arm holds one edge of the shawl;

4) Below the seal are the English words "extra long grain, parboiled American RICE, 100 lbs. net" which are colored green and are in bold capital letters, with "rice" presented in especially large script;

5) At the bottom is the Riceland logo followed by the words "Riceland Foods" with its address in black lettering.

Defendant's exhibit # 11.

Riceland recorded sales for Bint al-Arab during its 1978–79 year but recorded no sales for 1979–80. Sales recommenced in 1980–81 and were especially good after September 1981.

In late 1981, aware of ARI's trademark and dress, Riceland, at the direction of merchant Alamoudi, modified its Bint al-Arab label so that the color scheme changed to yellow, red and black. In addition, the seal and the girl design were somewhat enlarged and the facial features slightly modified. Defendant's exhibit # 10. In December 1981, a label called "Gulf Girl" emerged in Saudi Arabia. Plaintiff's exhibit # 45. This label, also packaged by Riceland for a private Saudi Arabian owner, duplicates the yellow-red-black color scheme. It displays a girl—centered without any background—between black Arabic script. She is shown from the bust up, without arms, hair uncovered. Her skin is yellow, hair black, and dress red. A simple collar outlines her neck in black.

As soon as the Bint al-Arab label was changed in 1981, some confusion resulted among the Saudi Arabian stevedores. Photographs and Petritis' testimony indicate that Riceland bags were sent accidentally

and mixed with ARI bags at a merchant's warehouse. Plaintiff's exhibits # 40a–f. On another recent occasion, Petritis was visiting merchant Alamoudi and heard Alamoudi attempt to tell a customer looking for Abu Bint that Bint al-Arab was the same as Abu Bint.

The defendant offered the following evidence of other products sold in Saudi Arabia using a "girl" theme on their labels:

1) Rice bearing designs of two girls (defendant's exhibits # 12) and of three girls (defendant's exhibit # 44);

2) Cooking oil with the green and yellow Bint al-Arab label (defendant's exhibit # 38);

3) A chick-peas can displaying a dark-haired girl dressed in a white, aproned mini-skirt and standing to one side of a bowl of peas, bearing a trade name "Vicky" (defendant's exhibit # 48);

4) "Girl of the Peninsula" cooking oil can, bearing the profile of a dark-haired, veiled woman clutching a pink telephone receiver in one hand, and below whom is a display of various foods (defendant's exhibit # 52);

5) An Italian tomato can bearing a tradename of "Rosanna" and displaying a picture of tomatoes in the center and a picture of a fair-haired girl to one side (defendant's exhibit # 51);

6) A tomato paste can displaying a dark-haired girl with the tradename "Valentina" (defendant's exhibit # 50).

### III.

■ This Court has jurisdiction of this action by virtue of 28 U.S.C. § 1338(a) and (b) and 15 U.S.C. § 1121. Moreover, the equitable power of this Court may reach the alleged infringing acts of defendant. Both ARI and Riceland are American rice cooperatives, which sell rice grown, milled, and packaged in this country. This rice is then shipped via the facilities of interstate and foreign commerce to both national and international destinations. The labels in question mark rice packages sold exclusive-

ly in Saudi Arabia. However, even though the ultimate sale of these packages occurs in a foreign country, this Court is not deprived of its power to issue proper equitable relief. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252 (1952); *George W. Luft Co. v. Zande Cosmetic Co.*, 142 F.2d 536 (2d Cir.) *cert. denied*, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606 (1944); *Hecker H–O Co. v. Holland Food Corp.*, 36 F.2d 767 (2d Cir. 1929).

Defendant has argued that under *Luft* this Court has no jurisdiction to enjoin Riceland's alleged acts of infringement. In *Luft*, the defendant was prohibited by the district court from showing its right to use an alleged infringing tradename established under foreign local laws. The Second Circuit held that such evidence was admissible and, if shown, would prohibit the district court from issuing an injunction affecting shipments to countries where the defendant had established its right to use the tradename. *George W. Luft, supra*, at 540 (alleged infringing acts "constitute no wrong to the plaintiff in the country where they are to be consummated"). In the present action, defendant has not shown its legal right to use its mark and trade dress. Although defense witnesses asserted that merchant Alamoudi- "owned" the Bint al-Arab mark in Saudi Arabia, no evidence demonstrated that Alamoudi's right to use that mark was legally established and superior to plaintiff's mark in Saudi Arabia. Instead, the evidence shows that ARI's mark and dress preceded Riceland's (Alamoudi's) by several years and were well-established before Bint al-Arab surfaced in Saudi Arabia. Thus, the *Luft* restrictions do not apply.

### IV.

■ Plaintiffs seeks a preliminary injunction[3] and, thus, have the burden of showing the following four elements:

1) a substantial likelihood of plaintiff's success at a trial on the merits;

2) immediate and irreparable harm to plaintiff;

---

**3.** *See* 15 U.S.C. § 1116.

3) that a balance of the equities would favor the plaintiff; and

4) that the public interest would be served by an injunction.

*Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Scientific Applications v. Energy Conservation Corp.*, 436 F.Supp. 354, 357 (N.D.Ga. 1977); *Florida v. Real Juices, Inc.*, 330 F.Supp. 428, 434–35 (M.D.Fla.1971); *Carling Brewing Co. v. Philip Morris, Inc.*, 277 F.Supp. 326, 334 (N.D.Ga.1967). The Court considers each element seriatim.

### V. Substantial Likelihood of Plaintiff's Success

In order to assess ARI's likelihood of success, this Court must measure the applicable legal standards and authorities in light of the evidence presented at the February 5th hearing.

■ In count I of plaintiff's complaint, ARI alleges that Riceland's activities amount to "an imitation and simulation" of plaintiff's girl marks and trade dress constituting a violation of 15 U.S.C. § 1125(a). *See Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702 (5th Cir. 1981). Although ARI's girl design marks are federally registered, thus protected under 15 U.S.C. § 1114(1), see complaint, count II, ARI's common law rights which protect the unregistered word marks and trade dress of Abu Bint may be asserted under § 1125(a). *See Chevron Chemical Co., supra; Sun-Fun Products v. Suntan Research and Development*, 656 F.2d 186, 192 (5th Cir. 1981); *Boston Professional Hockey Assn. v. Dallas Cap & Emblem*

*Manufacturing*, 510 F.2d 1004, 1008, 1012–13 (5th Cir.) *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). Although § 1125(a) is somewhat broader than § 1114(1) because it covers common law trademark and trade dress infringement, both causes of action are similar and often the same set of facts will support both allegations. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258–59 (5th Cir.) *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *Boston Professional Hockey, supra*, at 1010.

■ The test, which governs both sections of the Lanham Act, is the likelihood of consumer confusion as to the source of products.[4] *See Chevron Chemical Co., supra*, at 703; *Sun-Fun Products, supra*, at 189; *Exxon Corp. v. Texas Motor Exchange*, 628 F.2d 500, 504 (5th Cir. 1980); *Amstar Corp., supra*, at 258; *Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368, 382, 388 (5th Cir. 1977); *Boston Professional Hockey, supra*, at 1012–13. This test comprises a number of factors or digits including the following: similarity of product, similarity of retail outlets and purchasers, similarity of design, strength of the trademark, defendant's intent, actual confusion, and the similarity of advertising media. *See Chevron Chemical Co., supra*, at 703; *Amstar Corp., supra*, at 259; *Exxon Corp., supra*, at 504; *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir. 1975). In *Sun-Fun Products*, the Fifth Circuit stressed that once the plaintiff has presented evidence of a "threshhold level of similarity . . . 'all the surrounding circumstances should be scrupulously explored.'" *Sun-Fun Products, supra*, at 189 (quoting Call-

---

**4.** Plaintiff's allegation of common law unfair competition and trademark infringements, see complaint, counts II & III, do not appear to add any rights greater than those available under the Lanham Act. The general test, accepted by both parties, is likelihood of confusion. *See Trademarks and Tradenames*, 74 Am.Jr.2d §§ 118, 119 (1974). Having concluded that Riceland's acts violated the Lanham Act, this Court need not decide any potentially thorny problem of choice of law—an issue entirely avoided by both parties. *See Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368,

382 n.14 (5th Cir. 1977) (unresolved discussion about choice of law).

Likewise, this Court need not reach the allegation (complaint, count IV) that defendant's acts amounted to deceptive trade practices under the Texas Deceptive Trade Practices Act. Tex. Bus. & Comm.Code Ann. §§ 17.41–.62 (Vernon Supp.1980–81). The Court notes, however, that plaintiff's claim under the Act is highly doubtful because plaintiff does not appear to be a "consumer." §§ 17.45(4), 17.50. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981).

man, The Law of Unfair Competition, Trademarks and Monopolies § 82.2 (3d ed. 1969)). The court noted further that judges must "refer to the operative facts behind the scene. Equally as significant as the general appearance of the trademarks is their effect upon dealers, purchasers and other competitors." *Id.*

■■■ Thus, because confusion cannot be assessed in a vacuum, of underlying and crucial importance regarding a finding of "likelihood of confusion" is the particular market, that is, the consuming public the goods are directed toward. This Court must consider the alleged similarity in design in light of the consumers purchasing the product and, thus, the kind of care such purchasers will exercise in buying those products. *See Chevron Chemical Co., supra,* at 704 (discussion of how closely buyer would inspect products); *Sun-Fun Products, supra,* at 189 (court should consider "degree of care purchasers are likely to exercise when selecting products of the type sold by the parties"); *Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496, 504 (5th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979) ("ordinary purchaser" would not be confused by carpet labels); *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 353 (9th Cir. 1979) (courts must assess "typical buyer exercising ordinary caution"; this standard excludes the "wholly indifferent" but includes "the ignorant and the credulous."); *Kentucky Fried Chicken, supra,* at 389 (court pinpointed "typical buyer," franchisees of Kentucky Fried Chicken); *Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc.,* 395 F.2d 457, 462 (3d Cir. 1968) (sophistication of class of buyers is "matter of importance"); *Sun-Maid Growers v. Sunaid Food Products, Inc.,* 356 F.2d 467, 469 (5th Cir. 1966) (per curiam) ("The test . . . is not whether the labels can be distinguished, but whether the usual purchaser, a housewife . . ." would think defendant's products were connected with plaintiff's.); *American Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619, 623 (5th Cir. 1963) (purchasers identified as "housewives"). The characterization of the buying public is important because it is that

public which accepts a producer's trademark and for whose protection, in part, trademark laws are promulgated. *See Scarves by Vera, Inc. v. Todo Imports, Ltd.,* 544 F.2d 1167, 1172 (2d Cir. 1976); *Waples-Platter Cos. v. General Foods Corp.,* 439 F.Supp. 551, 573 (N.D.Tex.1977).

## VI.

### A. Products, Outlets and Purchasers

In reviewing the factors or digits outlined above, this Court can easily dispose of some of them. First, Abu Bint, Bint al-Arab, and the Gulf Girl labels mark the same product: rice grown, milled and packaged in the United States. Next, they all reach the same retail outlets and purchasers in Saudi Arabia. These factors point toward a finding of likelihood of confusion.

A common denominator in this case is the Saudi Arabian buying public. This consuming market may be generally described as illiterate and less sophisticated than that which may be found in this country.

### B. Similarity of Design

■■■ This Court must look at the overall impression and affect of the label rather than focus on differences in details. *Chevron Chemical Co., supra,* at 704. *Armstrong Cork Co., supra,* at 502. There are some basic similarities between the Abu Bint design and the Bint al-Arab and Gulf Girl designs. All three display a single girl figure from the waist up (although the Gulf Girl design begins at the bust). All the designs are centered on the bags. The clothes in the design are colored red, and the skin colored yellow. All are labeled with similar tradenames, relating to the girl theme—Girl Brand (Abu Bint); Arab Girl (Bint al-Arab); and Gulf Girl.

In regard to the Gulf Girl label, the similarity is even closer to Abu Bint because, like Abu Bint, the girl design is placed by itself—that is, without any background or other design around it. Further, like the Abu Bint girl, Gulf Girl displays a full head of black hair and a modern-looking dress,

with a simple black-outlined collar and short sleeves. However, beyond the girl design themselves, the Gulf Girl label differs from that of ARI because it does not have any prominent, colored printing, but instead has simple, black Arabic script.

The Bint al-Arab design is different from ARI's design in some respects. First, the girl is dressed in traditional-looking Arab clothing, only part of which is colored red; the rest is shaded black. Second, the girl's hair is covered by the shawl. Third, the girl is centered inside a circular seal which has Arabic and Roman script around it and framing the girl. However, the Bint al-Arab design is similar to the Abu Bint label in other respects. The layout and print style of both bags are similar. Large, colored printing frames both labels with the word rice being especially prominent at the bottom of both. Yet, the Riceland bag does not have the word "chopstick" on it, nor is its printing done in the oriental stylization.

Due to the nature of the consuming public in Saudi Arabia, the focus here should be on the overall design. The particular distinctions in the script are of less importance—except in considering the broad, overall design. The designs of both Bint al-Arab and Gulf Girl brands have elements which imitate the mark and dress of Abu Bint. Both competitors of Abu Bint also employ the single girl theme in their trade-names.

Consequently, the Court finds that some general and particular similarities exist among the three labels. Although certain differences do exist, the overall impression of Bint al-Arab and Gulf Girl labels might be likely to confuse the Saudi Arabian public.

## C. Strength of the Mark

Evidence introduced by Riceland indicates that other rice brands in Saudi Arabia have a girl design.[5] One label pictures three girls; another, two girls, which has been packaged and sold by Riceland since 1974. However, except for Bint al-Arab and Gulf Girl, none have the single girl motif of Abu Bint. According to Petritis, these other brands have never caused any confusion because they are not single girl designs.

In addition, Riceland introduced labels of products, other than rice, bearing various girl designs on them. These products include cooking oil, tomatoes, and tomato paste.

█ If ARI were trying to protect its marks from imitation by producers of products *other than* rice, this Court might conclude that ARI's marks were so weak they should not be afforded a wide range of protection. *See Amstar Corp., supra*, at 259 (Domino sugar could not prevent use of name Domino in conjunction with pizza). However, ARI seeks to protect its well-known and arbitrary mark [6] only within its own product market—rice. Even if weak outside the rice market, the mark may be protected within its own market. *See Amstar Corp., supra*, at 260 ("[t]hird party uses ... merely limit the protection to be ac-

---

5. The Court does not accord much weight to the evidence that several American food products use trademarks of female or employ labels with the word "girl." See defendant's exhibits # 7, 35, 36. At issue is the strength of the ARI trademark—an element of likelihood of consumer confusion. In this case, that likelihood should be assessed in light of the Saudi Arabian market. *See Application of Clorox Co.*, 578 F.2d 305, 311 (Cust. & Pat.App.1978) (Markey, C. J., concurring). Hence, relevant to a consideration of the mark's strength are trademarks used on products sold in Saudi Arabia, not in this country. Even if relevant, these trademarks, except for exhibit # 7, apply to food products other than rice. Thus, while they may weaken the strength of ARI's mark out-side of the rice market, they do not affect ARI's position within that market. *See Amstar Corp., supra*, at 260.

6. Neither party has discussed what kind of mark ARI has. The Court, however, observes that the girl design and accompanying trade-name, Abu Bint, appear to be "arbitrary or fanciful" *See Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981)); thus, it is "inherently distinctive." *Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Association*, 651 F.2d 311, 317 (5th Cir. 1981) (footnote omitted).

corded plaintiff's mark outside the uses to which plaintiff has already put its mark"); *AMF Inc., supra,* at 350. Moreover, defendant's meager evidence does not show what recognition these other brands have in the market place. *See Scarves by Vera, supra,* at 1173–74 (significance of third-party trademarks depends wholly upon their usage). The Court concludes that ARI has shown that its girl brand marks are both distinctive and sufficiently strong within the Saudi Arabian rice market to avoid being precluded from protection because of this element alone.[7]

## D. Defendant's Intent

On the one hand, there is no direct evidence that defendant intended to infringe the marks or trade dress of plaintiff. *But see, e.g., Chevron Chemical Co., supra,* at 704 (defendant intended to copy plaintiff's trade dress as much as the law would allow); *Sun-Fun Products, supra,* at 190. Moreover, Riceland, regarding both the Bint al-Arab and Gulf Girl brands, contends that it was innocent of any bad motive because it acted as a private labeler at the command of the true Saudi Arabian owners.

■ On the other hand, at the time Riceland changed the colors of Bint al-Arab from green and yellow to red and yellow, it was aware of competitor ARI's longtime and successful use of the latter colors, of its single girl design, and of its Arabic brand name. The introduction of the red-yellow dress followed a year of no sales for the same mark in the green-yellow dress. Further, after sales increased in Bint al-Arab with the red-yellow dress, Gulf Girl brand was introduced using the same colors, a single girl even closer in some respects, to the Abu Bint design. Riceland, even as a "private labeler," must be concerned with the sales of these rice brands because it is Riceland's rice which is packaged and sold under those marks. Thus, Riceland plays an active role in competing with ARI for the Saudi Arabia market. Just because it may not "own" the mark in that country does not relieve it of responsibility for any violation of American trademark laws, especially when Riceland knowingly participates in the violation. *See John B. Stetson Co. v. Stephen L. Stetson Co.,* 85 F.2d 586, 588 (2d Cir.), *cert. denied,* 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446 (1936); *Andrew Jergens Co. v. Bonded Products Corp.,* 21 F.2d 419, 424 (2d Cir. 1927) *cert. denied,* 275 U.S. 572, 48 S.Ct. 204, 72 L.Ed. 432 (1928) (Manufacturer of product sold to another company for ultimate wholesale and retail distribution is liable as a "contributory infringer."); *Corning Glass Works v. Jeannette Glass Co.,* 308 F.Supp. 1321, 1325–27 (S.D.N.Y.1970), *aff'd per curiam,* 432 F.2d 784 (2d Cir. 1970); *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 295 F.Supp. 479, 499–500, 500 n.78 (S.D.N.Y. 1968).

■ Hence, Riceland may not claim utter innocence and "good faith." Riceland has to conform to the laws of this country and is subject to the Lanham Act. As a competitor with ARI, Riceland has a duty not to trade on the good will and reputation of ARI's product by imitating the trademarks and trade dress of Abu Bint. *See AMP Inc. v. Foy,* 540 F.2d 1181, 1186–87 (4th Cir. 1976); *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.,* 281 F.2d 755, 758 (2d Cir. 1960).

In sum, while awareness of another's mark may not equal "intent," *see Amstar Corp., supra,* at 263, the testimony circumstantially indicates that Riceland was willingly participating in an attempt to imitate ARI's marks and trade dress for its own profit.

## E. Actual Confusion

■ Although the standard is "likelihood of confusion," proof of actual confusion is deemed the best evidence of that likelihood; but the lack of such evidence

---

7. *But cf. Sun Banks of Florida, Inc., supra,* at 317 (5th Cir. 1981) (The evidence abundantly established existing third-party use of the name 'Sun,' both within and without the financial community.") (footnote omitted).

does not necessarily prove the converse. *Chevron Chemical Co., supra,* at 704, *Amstar Corp., supra,* at 263; *Exxon Corp., supra,* at 506. No evidence of actual *consumer* confusion was produced at the hearing. However, the testimony of Petritis indicated that stevedores had mixed up packages of Abu Bint and Bint al-Arab. As these stevedores comprise the same market which ultimately purchases the rice, this evidence is probative of the likelihood of confusion. Also indicative of actual consumer confusion is Riceland's admission that Bint al-Arab sales were especially good after the red-yellow color change in September 1981.

▇▇▇ Related to this evidence was Petritis' testimony about an incident of "palming off" in the office of merchant Alamoudi, who told a potential customer that Bint al-Arab was the same as Abu Bint. This evidence is probative of Abu Bint's unfair competition charge, the essence of the alleged § 1125(a) violation. *See Chevron Chemical, supra,* at 701–02.

### F. Advertising

Neither ARI nor Riceland used newspaper or other media advertising. ARI, but not Riceland, employed a wide range of promotional items to stimulate sales. In that respect, their advertising methods were not alike. Yet, both also relied on the same methods of distribution and word-of-mouth promotion. Both rice products were distributed by identical or similar merchants who offered samples and/or displayed hanging pictures or framed burlap bags with the brand design. In that respect, both parties' advertising was similar.

### G. Conclusion

▇▇▇ In sum, this Court finds that plaintiff has presented evidence demonstrating its substantial likelihood of success at a trial on the merits. Likelihood of confusion is due to the introduction of the red, yellow and black Bint al-Arab and the Gulf Girl labels. Defendant packages and sells the same product, rice, as plaintiff does. They both reach the same market. They both use the same advertising approach, although plaintiff has introduced a significant number of promotional items. There is some evidence of defendant's intent. There is some evidence of actual confusion. The designs of all three labels have similar characteristics. In light of the consuming public, careful distinction between the brands of a common product probably would not be expected. Thus, plaintiff has carried its burden on this element in regard to these two labels.

More difficult to decide is whether the green, yellow and black 1978 Bint al-Arab label infringes on ARI's trademark rights. The essential difference between this label and Riceland's 1981 label is the substitution of red for green in the trade dress.

Except for the factors of similarity of design and the defendant's intent, the other digits remain the same. Evidence of defendant's intent to deceive is weaker than that discussed above because no evidence, other than the defendant's awareness of ARI's label, was presented.

▇▇▇ However, the other factors still point toward a finding of likelihood of confusion. The same product, retail system, and consumers are reached. The green-yellow label Bint al-Arab bags were mixed with Abu Bint bags, evidence of actual confusion. More important is the consideration of a basically illiterate and unsophisticated public, which relies heavily on pictorial symbols to differentiate between products. As noted above, the pictorial symbol of ARI is the single girl design. Even though this design has oriental features, the basic mark identifying Abu Bint and differentiating it from other rice brands is a girl, as compared to the camels, swords, and lions of other brands. As noted above, ARI's rice was referred to in Saudi Arabia as "girl brand." The Court further notes that the basic similarities between the Abu Bint design and the 1978 design of Bint al-Arab still exist. Both depict a young girl waist up and facially-colored bright yellow; the arrangement of the print and the design and the print size are similar; and both use

a single girl tradename. In conclusion, the Court also finds that ARI has presented sufficient evidence of a likelihood of confusion to satisfy the first element of a preliminary injunction.

## VII. *Irreparable Harm*

 Having found that the marks and dress of ARI and Riceland are confusingly similar, that the public may likely believe that the rice sold under these labels originates from the same source, this Court concludes that plaintiff ARI is faced with immediate and irreparable harm. Because plaintiff may not control the quality of defendant's goods, ARI has lost and faces future losses of its own reputation and goodwill. This loss of control, in spite of defendant's claim that its rice quality equals plaintiff's, constitutes immediate, irreparable harm. *Chips 'N Twigs, Inc. v. Chip-Chip, Ltd.*, 414 F.Supp. 1003, 1018 (E.D.Pa.1976). The confusion caused by the defendant's labels and loss of goodwill will be difficult to pinpoint as compensable damages, and, thus, the harm is irreparable. *Scientific Applications, supra,* at 361–62; *Carling Brewing, supra,* at 335–36 ("the infringement of a trademark is, by its very nature, an activity which causes irreparable harm," *Id.* at 335).

## VIII. *Balancing the Equities*

 The Court initially notes that plaintiff has built up a strong market for its rice in Saudi Arabia since its introduction in 1966. On the other hand, Riceland's single girl labels have been marketed for only a fairly short time—since 1978. Moreover, Riceland has not employed any of the extensive giveaway items ARI used to promote Abu Bint rice. Only since September 1981, when the Bint al-Arab red and yellow label was introduced have Riceland sales appreciably increased. Thus, the Court notes that Riceland's loss will be somewhat small. Defendant's labels have not been in the market for a long time, have not been heavily promoted, and have not built up a strong following. Without the injunction ARI faces further weakening of its label,

resulting in loss of sales and goodwill. With the injunction, Riceland's loss will be somewhat minor but its right to compete fairly in the Saudi Arabian market will not be affected. While the Court is not unsympathetic to defendant's position, on balance the Court finds that the equities favor plaintiff. *See Scientific Applications, supra,* at 362; *Carling Brewing, supra,* at 337.

## IX. *The Public Interest*

The defendant claims that a preliminary injunction would not be in the public interest because Riceland would be prohibited from exporting rice under the Bint al-Arab label. Carl Brothers, Riceland's vice-president of sales, testified that Saudi Arabian sales comprise 15% of Riceland's export sales. Consequently, a preliminary injunction would negatively affect the American rice business.

 The Court again notes, however, that an injunction will not affect Riceland's right to sell or export rice to Saudi Arabia. An injunction will reach only Riceland's ability to package under unfairly competitive trademarks and dress. In addition, the lack of injunctive relief also may negatively affect those American rice farmers who are part of the ARI cooperative. Finally, and most important, the public interest is served by enjoining unfair trade practices which occur within that commerce subject to the lawful regulation of Congress, thus upholding the purposes of the Lanham Act. *See Steele v. Bulova Watch Co., supra,* 344 U.S. at 283–87, 73 S.Ct. at 254–56. As stated in the Act,

> The intent of this Act ... is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce ... to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks.

15 U.S.C. § 1127. Consequently, the Court finds that a preliminary injunction would serve the public interest, in keeping inter-

state and foreign commerce free of unfair competition. *See Scientific Applications, supra,* at 362–63 ("one purpose of the Act is to protect the interest of nationally expanding business.").

## X. *Defenses*

### A. *Laches*

Riceland claims that ARI's delay in bringing this suit constitutes laches and that, therefore, this Court should bar ARI's right to injunctive relief. The Court notes that ARI filed this suit within three weeks of the introduction of the red-yellow Bint al-Arab label in Saudi Arabia. Although no immediate court action was taken against the 1978 green and yellow label when it was introduced, ARI is in the process of opposing Riceland's attempt to have its girl design registered in the United States Trademark Office. Plaintiff's exhibit No. 41.

■ The Court concludes that laches should not bar injunctive relief in this case for three reasons. First, laches is inapposite where the evidence demonstrates a history of slow encroachment followed by increased direct competition. *Parrot Jungle, Inc. v. Parrot Jungle, Inc.,* 512 F.Supp. 266, 270 (S.D.N.Y.1981); *Miss Universe v. Patricelli,* 271 F.Supp. 104, 110 (D.Conn.), *aff'd,* 386 F.2d 997 (2d Cir. 1967). Defendant's change to the red-yellow-black trade dress intensified the likelihood of consumer confusion caused by the original Bint al-Arab label. Moreover, ARI has been diligent in its attempts to stop Riceland's use of its infringing marks. ARI has opposed Riceland's attempts to register its trademark in this country. In addition, ARI quickly sought a preliminary injunction when the red-yellow trade dress was combined with the Riceland girl design. Second, as a general rule, the defense of laches does not bar injunctive relief, although other relief, such as an accounting may be barred. *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 614–15 (7th Cir. 1965) ("only in the most exceptional circumstances will injunctive relief be denied in a case of deliberate infringement"); *Blue Bell, Inc. v. Ruesman,* 335 F.Supp. 236, 237 (N.D.Ga.1971); *Ameri-*

*can Hospital Association v. Bankers Commercial Life Insurance Co.,* 275 F.Supp. 563, 565 (N.D.Tx.1967), *aff'd per curiam,* 403 F.2d 718 (5th Cir. 1968), *cert. denied,* 394 U.S. 1018, 89 S.Ct. 1629, 23 L.Ed.2d 43 (1969); *Trademarks and Tradenames,* 74 Am.Jur.2d § 159 (1974). Finally, the Court observes that defendant has made no showing of prejudice because of any delay, a factor normally considered when laches is asserted. *See, Tisch Hotels, supra,* at 615 (Delay must amount to "virtual abandonment" so that "balance of equities would favor the knowing infringer."); *Cuban Cigar Brands N.V. v. Upmann International, Inc.,* 457 F.Supp. 1090, 1096–98 & n.29 (S.D.N.Y.1978) (delay alone does not constitute laches). In light of the facts presented, the Court holds that the circumstances do not warrant a finding that laches bars plaintiff's relief. *See Coca-Cola Co. v. Howard Johnson Co.,* 386 F.Supp. 330, 334 (N.D.Ga. 1974) ("Whether laches bars an action depends on the circumstances of the particular case and is a question addressed to the discretion of the trial court.")

### B. *Indispensable Party*

■ Defendant claims that Alpha Trading Company because it co-owns the Abu Bint mark is an indispensable party without whom this action may not proceed. However, no evidence produced at the hearing demonstrates that Alpha is a co-owner. The testimony indicates instead that Alpha is ARI's exclusive agent with the right to help register the Abu Bint mark. ARI did not intend to assign and has not assigned any ownership rights to Alpha. Hence, Alpha is not an indispensable party.

## XI.

Having found that ARI has met all the elements for a preliminary injunction, an appropriate order will be entered. In so doing the Court is guided by the Fifth Circuit's observations, "an injunction can be therapeutic as well as protective. In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities

that, standing alone, would have been unassailable." *Kentucky Fried Chicken, supra,* at 390 & n.29 (citations omitted). *Accord Chevron Chemical, supra,* at 705–06. Further, in *Chevron Chemical,* the Fifth Circuit ordered a district court to construe the phrase "confusingly similar" broadly so that the violative trade dress and all others which amounted to attempts to "retain part of the goodwill originally misappropriated" would be prohibited. *Chevron Chemical, supra,* at 705–06. Thus, the Court notes that even if the green-yellow 1978 label is not, strictly speaking, confusingly similar to the Abu Bint label, the 1978 label should be enjoined also because its continued use would be an attempt by Riceland to retain part of the goodwill misappropriated from ARI.

Therefore, it is ORDERED, ADJUDGED and DECREED that

1. plaintiff's motion for a preliminary injunction is GRANTED;

2. defendant, Riceland, its agents, servants, employees, and attorneys, and those in active concert with them, are hereby prohibited from using, directly or indirectly, in any manner, in connection with its rice sales, packaging, exportation and promotion, a single girl design trademark, single girl tradename, and the red-yellow-black trade dress in conjunction with the single girl design trademark, or any other colorable imitation or simulation of the Abu Bint trademark and dress, which limitation or simulation may amount to an act of unfair competition and, thus, may cause confusion in the Saudi Arabian consuming public such that the public may erroneously believe or assume Riceland's business or rice is related to or sponsored by ARI's business or rice.

3. plaintiff ARI post a bond of $25,000 for this preliminary injunction to become effective; this bond will help safeguard against any costs and damages which may be directly sustained if this preliminary injunction is improvidently issued.