**PRO HARDWARE, INC., et al.**

v.

**HOME CENTERS OF AMERICA, INC.**

C.A. No. C–83–162.

United States District Court,
S.D. Texas,
Corpus Christi Division.

April 6, 1984.

Camp Cuthrell, Cuthrell, Hough, Hulings & Thornton, Corpus Christi, Tex., for plaintiffs.

Seagel V. Wheatley, Oppenheimer, Rosenberg, Kelleher & Wheatley, San Antonio, Tex., for defendant.

## ORDER GRANTING PRELIMINARY INJUNCTION

HEAD, District Judge.

This case is a dispute for the use of the word "PRO" between businesses engaged in the sale of hardware and home-improvement materials. The Plaintiffs are Pro Hardware, Inc., C.C. Distributors, Inc., and Herman R. Johnson, Sr., d/b/a Turf & Irrigation Company. Plaintiff Pro Hardware, Inc., hereinafter called "Pro Hardware," is a New York corporation engaged in the business of providing hardware services and products through a distribution network to independently owned retail hardware, lumber and building material establishments. Pro Hardware provides technical assistance to wholesalers and retailers on how to operate a hardware store, how to market its wares, and how to buy hardware with Pro Hardware's assistance from national manufacturers at a discount. Pro Hardware receives a commission from manufacturers for its orders. Plaintiff CC Distributors, Inc., hereinafter called "CC Distributors," is a Texas corporation and is the local distributor for Pro Hardware services and products in Corpus Christi and the surrounding area. Plaintiff Herman Johnson, hereinafter called "Turf & Irrigation Company," is one of eight hardware retail stores in Corpus Christi that is licensed by Pro Hardware and CC Distributing to use the mark "PRO" in connection with the operation of its hardware store.

Defendant Home Centers of America, Inc., hereinafter called "HOME PRO," is a Delaware corporation with its principal offices in San Antonio, Texas. HOME PRO sells through its several retail outlets hardware, lumber, and building materials. HOME PRO views itself as a marriage of two industries—the lumber industry and the hardware industry. A HOME PRO store is named a "HOME PRO WAREHOUSE." The use of the word "warehouse" is indicative of the marketing technique used by HOME PRO, that is, a very large building with rows and rows of merchandise stacked in warehouse fashion where the customer sees all material held by the store and selects what he wants. Pro Hardware stores, however, generally bear the tradename of the owner, or perhaps the owner's name, in conjunction with the word "PRO," and are much smaller in size and are generally a traditional hardware store located in a suburban shopping center.

This suit was filed after it came to the attention of Pro Hardware that HOME PRO intended to open a warehouse in Corpus Christi, Texas, and had previously done so in San Antonio. The San Antonio store openings were unknown to Pro Hardware because Pro Hardware had no distributors or stores in San Antonio.

### JURISDICTION

This Court has jurisdiction over the subject matter of this suit and the parties under the Federal Trademark Act, 15 U.S.C. §§ 1051–1127, and jurisdiction is fur-

ther proper under 28 U.S.C. §§ 1332, 1338(a) and 1338(b). The matter in controversy exceeds $10,000, exclusive of costs and interest. Venue is proper.

## SPECIAL FACTS

The trademarks involved in this suit are owned by Pro Hardware and are registered with the United States Trademark Office as follows:

> Pro Registration No. 791976 of June 29, 1965—for "rendering technical assistance to retail hardware store operators in the fields of store planning, purchasing, advertising, sales, product planning, inventory planning, promotion, and financial guidance."

> PROMART Registration No. 964410 of July 17, 1973—for "retail store services specializing in hardware, appliance, home and garden equipment and supplies, building supplies, and related products."

> PRO design mark, Registration No. 816358 of October 4, 1966—"for indicating membership in a collective group associated through and with applicant and authorized and approved by applicant."

Defendant does not dispute Pro Hardware's ownership of the registrations or their validity. What Defendant disputes is the exclusivity of the use of the word "PRO" with respect to its own operations.

Since its organization in 1953, Plaintiff has worked with independent PRO and later PROMART dealers in the distribution and retailing of hardware and building materials and lumber to the public. The PRO program is described in Plaintiffs' Exhibit 1, as testified by Harold Duncan, Chairman of the Board of Directors of Pro Hardware and its chief executive officer. Basically, the PRO program includes a national and international identification with the PRO mark, personalized service, extensive merchandise availability, volume buying power, inventory management, complete promotional program, store planning, merchandising aids, computer services, and retail training. The PRO buying distribution and retail system has twenty distribution centers located throughout the country, with distribution and retail facilities in Canada, United Kingdom, Italy, South Africa, and Australia. The PRO identity has been and continues to be widely advertised. Pro Hardware has continuously advertised PRO for more than twenty years and PROMART for more than ten years through circulars, newspaper ads, brochures, trade journals, TV and radio.

CC Distributors also advertises and promotes the PROMART marks through newspapers, brochures, and TV. Although the PRO distribution is not the exclusive business of CC Distributors, the PRO and PROMART marks have been and are used in a variety of ways in their advertising. The retail stores have sometimes incorporated PRO as part of their store names, e.g., "Town and Country Pro Hardware," "Center Pro Hardware." PRO retail stores are not required to use the word "PRO" in their names, however, they are all required to display it. Bud Wilkinson has advertised internationally for PRO and PRO's slogan is "PRO advice plus a real good price." Brochures also invite readers to "get the PRO advantage."

Through its efforts, the PRO program has become the second largest wholesale merchandising hardware group in the country, handling a wholesale volume of 605 million dollars in 1983. The National Retail Hardware Association's managing director testified that the word "PRO" in the field of hardware wholesaling and retailing means Pro Hardware and its PRO program.

Defendant HOME PRO was incorporated as a Delaware corporation on February 13, 1983, and in May of that year opened its first store in San Antonio under the name of HOME PRO WAREHOUSE. All of its stores bear that same name. It obtained the servicemark "HOME PRO WAREHOUSE" for use in connection with "retail hardware store services." This application is now pending. Its prospectus is submitted as Plaintiffs' Exhibit 86 and acknowledges competition with respect to some of its products with discount stores—local, regional and national—hardware

stores, independent building supply stores, and home centers. Pro Hardware's local retailers and distributors using the PRO marks are included in the foregoing category.

HOME PRO uses "PRO" in a variety of ways. Obviously, it uses the word "PRO" in connection with its own name, HOME PRO WAREHOUSE. It has also used the name as part of its application, "HOME PRO," for U.S. and Texas trademarks. PRO is used in connection with its advertising program; a character, "Joe Pro," has been created to represent a store clerk. Defendant most frequently uses the word "PRO" in reference to store personnel, who are called the "HOME PROs," i.e., professionals who can help the do-it-yourselfer upon entering the store. PRO is an important part of the name HOME PRO WAREHOUSE to the founders of the company. PRO was selected as a shortened form of "professional."

## CAUSE OF ACTIONS

Plaintiffs allege five causes of action. First, Defendant's use of the mark "HOME PRO WAREHOUSE" infringes Plaintiffs' trademarks "PROMART," "PRO," and "PRO" with a design, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; (2) Defendant's use of the mark "HOME PRO WAREHOUSE" constitutes unfair competition by being a false designation of origin, which is unlawful under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) Defendant's use of "HOME PRO WAREHOUSE" constitutes common law trademark infringement; (4) Defendant's use of "HOME PRO WAREHOUSE" constitutes common law unfair competition; and (5) the use by Defendant of "HOME PRO WAREHOUSE" violates the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Comm.Code, §§ 17.46(b)(1) and §§ 17.46(b)(2). Plaintiffs seek to enjoin preliminarily and permanently Defendant from using the word "PRO" in connection with its operations.

## INJUNCTIVE RELIEF

A District Court should issue a preliminary injunction in a trademark case only if the Plaintiff clearly demonstrates: (1) a substantial likelihood that the Plaintiff will ultimately prevail on the merits; (2) that the Plaintiff will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the Plaintiff outweighs whatever damage the proposed injunction may cause the Defendant; and (4) that the injunction, if issued, would not be adverse to the public interest. *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 114 (5th Cir.1979). The Plaintiff has the burden of proof and persuasion for each of these four factors.

Primary reliance has been placed at the preliminary injunction hearing and in their briefs by the Plaintiffs upon an action for trademark infringement under 15 U.S.C. § 1114, which provides: "(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause to deceive ... shall be liable in a civil action by the registrant..."

The Plaintiff must show a violation of this section by proving that the Defendant has used (1) any reproduction, counterfeit, copy, or colorable imitation of a mark, (2) without the registrant's consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, and (5) where such use is likely to cause confusion or to cause mistake or to deceive. *Boston Professional Hockey Assn., Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1009–1010 (5th Cir.1975). Section 1114 applies to servicemarks and collective membership marks, as well as to trademarks. *Id.*

The principal issue in this case and the issue that was tried before the Court is whether Defendant's use of the

word "PRO" is likely to cause confusion. Trademark infringement occurs only when the use sought to be enjoined is likely to confuse purchasers with respect to such things as the product source, its endorsement by the plaintiff or its connection with the plaintiff. *Kentucky Fried Chicken Corp. v. Diversified Packing Corp.*, 549 F.2d 368, 388 (5th Cir.1977). Likelihood of confusion is a question of fact in this circuit. *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir.1980). The likelihood of confusion is expressed in terms of the product's typical buyer. *Kentucky Fried Chicken, supra*, 549 F.2d at 369, n. 26. " 'The general impression of the ordinary purchaser, buying under the normal prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods, is the touchstone.' " *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 500–501, n. 5 (5th Cir.1979) (quoting 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies*, s. 81.2, at 577 (footnote omitted) (3d ed. 1969)). No proof of actual confusion is necessary. The likelihood of confusion is the determinative factor. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir.1971).

██ To determine whether there is a likelihood of confusion, the finder of fact is required to evaluate a variety of factors: (1) the type of trademark; (2) the similarity of design; (3) similarity of product; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) Defendant's intent; and (7) actual confusion. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir.1975). In reviewing the *Roto-Rooter Corp.* factors, the Court finds most of them favorable to the Plaintiffs. In reviewing all of the factors and balancing them, the Court finds that the Defendant's use of the word "PRO" will, and does, constitute confusion with the Plaintiffs' lawful use of their marks.

## I. TYPE OF MARK

Plaintiffs' "PRO" marks are validly registered and owned by Pro Hardware. Pro Hardware filed in the United States Patent and Trademark Office and the Office accepted affidavits under § 15 of the Lanham Act with respect to the incontestability of these registrations.

██ The Court concludes that the marks are incontestable under 15 U.S.C. § 1065. Since the marks are incontestable, they cannot be challenged as "merely descriptive." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980). The Court therefore rejects Defendant's argument that Plaintiffs' marks warrant little protection because they are merely descriptive.

According to National Retail and Hardware Association's managing director, William Mashaw, "PRO" in hardware retailing and wholesaling means Pro Hardware and the PRO program. The Court finds his testimony is unbiased and credible as to the strength of the word. He was aware of only one or two other uses of the word "PRO" on hardware products such as paint.

Although "PRO" is widely used in all facets of American life, from sports figures and sports activities to toothbrushes, "PRO" is a strong mark in the hardware business. Its strength has arisen as a result of the efforts of Pro Hardware, Inc., to build a network of wholesalers and retailers to market and sell under a Pro Hardware servicemark and trademark. Although many use "PRO" in connection with other businesses, Pro Hardware has steadfastly defended the use of the word "PRO" in the hardware field. Although there are many third-party registrations and uses of the word "PRO", the Court concludes that the many third-party "PRO" registrations outside the hardware field are not relevant to the strength of Plaintiffs' marks because Plaintiff does not seek protection of its PRO marks outside its own field. *Amstar v. Domino Pizza, Inc.*, 615 F.2d 252 (5th Cir.1980).

The Court is aware that *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Assn.*, 651 F.2d 311 (5th Cir.1981)

does not follow the distinction set forth in *Amstar*. Some District Courts continue to view *Amstar* as controlling. *American Rice v. Arkansas Ricegrowers Co-op.*, 532 F.Supp. 1376, 1386–1387 (S.D.Tex.1982); *Exxon Corp. v. Humble Exploration Co.*, 524 F.Supp. 450 (N.D.Tex.1981), reversed on other grounds, 695 F.2d 96 (5th Cir. 1983). Additionally, the Patent and Trademark Office, Trademark Trial and Appeals Board, in *BAF Industries v. Pro Specialties, Inc.*, 206 U.S.P.Q. 166, 175 (PATB 1980), finds third-party registrations relevant to the issue of the strength or weakness of a mark when the third-party registrations are "for goods and products identical in kind or closely related to those of applicant and opposer." The Court finds that Plaintiffs have demonstrated that their PRO marks are strong marks within the hardware merchandising industry.

## II. ACTUAL CONFUSION

■ Actual confusion is not required to sustain a claim of infringement under 15 U.S.C. § 1114, but in the view of the Fifth Circuit, it is the best evidence of likelihood of confusion. *World Carpets v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir.1971). Actual confusion, if shown, is highly persuasive as to the presence of likelihood of confusion. *Sun Banks, supra*, 651 F.2d at 319. In *Roto-Rooter*, the Plaintiff introduced evidence of actual confusion of four people. The Court of Appeals found that little proof of actual confusion is necessary to prove the likelihood of confusion. 513 F.2d at 46. But in *Sun*, the Fifth Circuit found evidence of actual confusion negligible when in three years only fifteen incidents were reported.

In this case, Plaintiffs presented five witnesses unaffiliated with Plaintiffs who in one month were confused as to the relationship between HOME PRO WAREHOUSE and Pro Hardware. Three were shoppers and two were familiar with CC Distributors' association with Pro Hardware. The obvious confusion in the tendency of counsel to become mixed-up in using the names "HOME PRO" and "Pro Hardware" tends to indicate that the ordi-

nary hardware/home improvement shopper would be subject to the same confusion. *See LaMaur v. Revlon, Inc.*, 245 F.Supp. 839, 845 (D.C.Minn.1968). The Court has rejected as hearsay testimony by retail establishment owners that customers had expressed confusion. The Court considers persuasive of actual confusion, however, the fact that a neutral reporter from the Corpus Christi Caller-Times in a newspaper article about this dispute confused the two names. The Court finds that there has been actual confusion of the names.

## III. DEFENDANT'S INTENT

■ A defendant's intent to use another's good name for his own benefit may alone be sufficient to justify the inference that there is confusing similarity. *Exxon v. Texas Motor Exchange, supra*, 628 F.2d at 506. The Court does not view this factor as solely determinative, but the Court finds it to be a strong factor. *Waples-Platter Co. v. General Foods Corp.*, 439 F.Supp. 551 (N.D.Tex.1977).

On this critical element of intent, the Court finds in favor of the Plaintiffs and concludes that the Defendant proceeded to use the "PRO" mark with the intent of deriving benefit from the reputation of the Plaintiffs. This finding is based, first, on a similar intrusion by Defendant on the name of another in the home center business, Home Improvement Depot. After complaint from the owner of the "Home Depot" mark, the Defendant changed its name to "Home Improvement Center." This similar conduct is circumstantial evidence of the Defendant's intent with respect to the "PRO" mark. Second, the Defendant's president had knowledge on April 7, 1983, that Pro Hardware held Registration No. 791,976. Third, Defendant's president and Defendant's chief marketing and advertising officer have extensive experience between them in the home center and hardware industries, both wholesale and retail. Both men denied ever having heard of Pro Hardware, despite the fact that they had either worked in or supervised home center operations in the very towns in which Pro Hardware competed. The Court finds it cannot accept that men of this experience within the

hardware/home center industry had not heard of a significant competitor.

## IV. SIMILARITY OF THE MARK

█ This factor is basically an eyeball test. *Exxon Corp. v. Texas Motor Exchange*, supra, 628 F.2d at 504 (citing 2 J. McCarthy, *Trademarks and Unfair Competition*, s. 237:7 (1973)). The marks, themselves, appear below.

From Plaintiffs' Exhibit 1.
Gold arrow on red-orange
background. Dark brown letters.
(Pro Hardware, Inc. makes no claim
to the colors in the design).

**HOME IMPROVEMENT MART**

From Plaintiffs' Exhibit 76.
"HOME PRO WAREHOUSE": White letters
on orange background. "HOME
IMPROVEMENT MART": Black (sometimes
light blue)letters on white background.

---

The Court does not consider there to be a difference of significance in the appearance of Pro vs. PRO. Both Plaintiffs and Defendant use PRO and Plaintiff also uses Pro.

Plaintiffs fail the eyeball test insofar as the design is concerned, but pass it in connection with the prominence and the importance that the Defendant gives with respect to the use of the word "PRO" in all of its advertising and on the face of its building. The word "PRO" itself, not specifically the design, has become the prominent feature of the Defendant's mark because it is the element most readily associated with the products or services identified. *Association of Co-op Members v. Farmland Industries*, 684 F.2d 1134 (5th Cir.1982).

## V. SIMILARITY OF ADVERTISING MEDIA USED

█ The greater the similarity in the advertising campaign used, the greater the likelihood of the confusion. *Exxon v. Texas Motor Exchange, supra*, 628 F.2d at 506.

Plaintiffs and Defendant use the same advertising media. Both use television, radio, newspaper ads, yellow pages, and signs identifying places of business. The Plaintiffs' campaign is national in scope, but the Defendant's is more local because Defendant has not yet attained a size comparable to that of Plaintiffs. There are some differences. At this moment, the Plaintiffs appear to concentrate on newspaper fliers, although they have used television in the past significantly. The Defendant relies on hard-hitting, hard-sell television commercials, citing the advantage of shopping with "the HOME PROs." The Defendant also uses full-spread newspaper advertising rather than newspaper fliers.

## V. SIMILARITY OF PRODUCTS

 The greater the similarity between the products and services provided by the Defendant and Plaintiffs, the greater the likelihood of confusion. *Id.* The Defendant strongly stresses in its case distinctions between its business and that of the Plaintiffs. The Defendant admits that it sells nearly all of the types of items handled by Plaintiffs' stores, but the Defendant urges that its variety of manufacturers is greater and so is its volume. That is true. The Defendant's business is an attempt to marry the lumber business and the hardware business. According to the Defendant, the traditional hardware business is out-of-date and will soon be a victim of the new marketing by this marriage industry.

The Court finds that the Defendant sells many items not handled by the Plaintiffs, especially in terms of lumber products, some home furnishings (such as furniture), and garden supplies. The Court also finds that many of the identical products are sold. The Court further finds that Plaintiffs' PROMART also handles lumber and other home improvement furnishings not technically considered hardware. Because of these similarities, the Court finds that there is a potential for the public to assume mistakenly that there is a connection between Plaintiffs and Defendant in the types of products sold.

## VII. IDENTITY OF RETAIL OUTLETS AND PURCHASERS

The retail outlets are grossly different. Plaintiffs' stores are traditional small hardware stores located in suburban shopping centers. Defendant's store is a large warehouse stacked high to the ceiling, row upon row of hardware and home-improvement goods. It is this warehouse-type merchandising together with the Defendant's use of the "PRO" name that Plaintiffs fear most. Plaintiffs fear that the use of the words, HOME PRO WAREHOUSE in the midst of Pro Hardware retail outlets will lead potential Pro Hardware store customers to assume that HOME PRO WAREHOUSE is a warehouse for Pro Hardware. That is logical, but there is no evidence that customers come to the Pro Warehouse believing it to be the "warehouse" in the area for Pro Hardware.

Target customers are not identical for Plaintiffs and Defendant. The Defendant aims at the ordinary consumer as well as at specialty and independent contractors. The Plaintiffs generally aim at the ordinary consumer of hardware or other home-improvement items.

 In conclusion, considering all seven factors, the Court finds that Defendant's use of "PRO" is likely to confuse the public. In addition to the foregoing, the Court finds that the Defendant is using a colorable imitation of the marks Pro, PRO, and PROMART, that the uses are without the registrant's consent, that the uses are in commerce and used in connection with a sale, offering for sale, distribution, and advertising of goods. These matters were not contested by the Defendant except, by implication, the use of a colorable imitation of a mark.

Therefore, the Plaintiffs have met their burden of proving that there is a substantial likelihood that they will prevail on the merits on their 15 U.S.C. § 1114 claim.

 Plaintiffs will suffer an immediate and irreparable harm because they cannot control the quality of Defendant's goods; loss of sales in Pro Hardware stores will ultimately be felt by all Plaintiffs. Loss of control constitutes immediate and irreparable harm. *American Rice, supra,* 532 F.Supp. at 1389. Compensatory damages will be extremely difficult to calculate, and, thus the harm is irreparable. *Id.*

Unless the Defendant is enjoined, Plaintiffs' mark will become weakened in spite of many years of effort to build it into a strong mark within the industry. Although Defendant contends it will be severely injured if the preliminary injunction issued because of advertising expenses and losses attributable to loss of recognition by the public, this argument "merits little equitable consideration in light of Defend-

ant's willful use of an infringing trademark." *Helene Curtis Industries v. Church and Dwight*, 560 F.2d 1325, 1333 (7th Cir.1977). The choice to the Court is awarding protection to those who over a substantial number of years have built the word "PRO" into a valuable and essential asset of their business, or protecting a Johnny-come-lately who is attempting to use the name of the former. The equities fall in favor of the Plaintiffs.

Public interest is always served by requiring compliance of statutes of Congress. This is true with respect to trademark registration and upholding the purposes of the Lanham Act. *American Rice*, 532 F.Supp. 1389. Accordingly, the Court finds that the public interest is served by the issuance of the preliminary injunction.

### CONCLUSION

The Plaintiffs have proven all elements required to obtain a preliminary injunction. Their application for a preliminary injunction is therefore GRANTED.

The Defendant is ENJOINED pending further decision by this Court from further use of the word "PRO" in association with the name of its retail stores.

IT IS FURTHER ORDERED that this injunction is STAYED until the Plaintiffs give the security required by Rule 65(c), Federal Rules of Civil Procedure.