**MOORE BUSINESS FORMS, INC.**

v.

**Marvin SEIDENBURG, d/b/a Moore Business Forms and Systems.**

Civ. A. No. 85–2356.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Sept. 27, 1985.

---

Charles G. Tutt, Cook, Yancey, King & Galloway, Shreveport, La., Robert A. Vanderhye and James T. Hosmer, Cushman, Darby & Cushman, Washington, D.C., for plaintiff.

Marvin Seidenburg, pro se.

## MEMORANDUM RULING

STAGG, Chief Judge.

Moore Business Forms, Inc. (hereafter referred to as "Moore") has sued defendant, Marvin Seidenburg, alleging violations of the Lanham Trademark Act, 15 U.S.C. §§ 1114(1), 1116, 1125(a) and La.R.S. 51:223.1. Moore has requested injunctive relief. A hearing was held on Wednesday, September 25, 1985, in conformity with Fed.R.Civ.P. 65. Based upon the evidence and the applicable law, this court determines that injunctive relief is appropriate.

This court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. The state law claim against the defendant is cognizable in this court under diversity jurisdiction, 28 U.S.C. § 1332, and under the theory of pendent jurisdiction.

## I PARTIES

Moore Business Forms, Inc. is a subsidiary of Moore Corporation Ltd., a Canadian corporation. Moore Business Forms, Inc. is incorporated in Delaware and has been doing business in the United States since 1946 under that name. Moore Business Forms, Inc. is a publicly-held corporation whose stock is traded on the New York Stock Exchange.

Moore Corporation Ltd. and its subsidiaries are known as "Moore" or "Moore's" in the business community. This corporation was started in 1882 by Samuel J. Moore. It is the largest manufacturer of business forms in the world. It has 1 million customers in the United States, and Moore Business Forms, Inc. accounted for $1.4 billion in sales in 1984 alone.

Defendant Seidenburg is a 57-year-old entrepreneur who has resided in Shreveport since 1975. Prior to that time he resided in Little Rock, Arkansas. He has owned and operated numerous businesses including a television news publication and a "Pen-Mar" or "Penmar" Business Forms company which brokered business forms manufactured by others and sold by him. The "Pen-Mar" business was discontinued upon defendant's divorce from his wife.

Defendant indicated that he continued to sell business forms under the name "Marv's Business Forms & Systems" after the demise of the "Pen-Mar" venture.

## II FACTUAL BACKGROUND

### A Plaintiff's use of "Moore"

Plaintiff has been doing business in the United States for over 100 years, using the name "Moore." Plaintiff has been doing business in Shreveport under that name since 1944 and currently has offices located at 2924 Knight Street in this city. Plaintiff has several registered trademarks and service marks of the name "Moore," pursuant to 15 U.S.C. §§ 1051–1054. Registration No. 1,281,875 is a service mark registration of the name "Moore" for leasing and rental of form-handling equipment. Registration No. 1,281,565 is a trademark registration of the name "Moore" for various types of business form machines. Registration No. 1,232,705 is a trademark registration of the name "Moore" for business forms. Registration No. 1,204,543 is a trademark registration of a large "M" with the name "Moore" beneath it. This trademark is reserved for business forms. All the subsidiaries of Moore Corporation Ltd., including Moore Business Forms, Inc., use the words "Moore Business ..." as the first two words of the corporate name. Moore has spent literally millions of dollars to promote the identity of the word "Moore" with business forms and business machinery. In the last 10 years, over $7 million has been spent in advertising. In 1984, $1 million was spent in advertising Moore products.

### B Defendant's use of "Moore"

Defendant first began using the name "Moore Business Forms & Systems" in connection with the sale of business form products in August 1984. Defendant alleges that he was given permission to use this name by Ray Stump Jr. Apparently Mr. Stump sought incorporation under this name from the State of Louisiana. There is no proof that this attempt at incorporation was ever finalized under Louisiana

law. Defendant is not an employee of Ray Stump, and admits no connection to Ray Stump other than his granting permission to use the name "Moore Business Forms & Systems." Defendant does business under the name "Moore Business Forms & Systems" from his apartment located at 3201 Knight Street, only two blocks from plaintiff's place of business. Defendant also conducts business under the name "Moore Printing & Mailing Inc." This business is apparently owned by Fashion Plus, a business concern which defendant alleges to be in bankruptcy. Defendant states that James S. Noel, on behalf of the stockholders of Fashion Plus, authorized defendant's use of the name and phone number of "Moore Printing & Mailing Inc." in return for a percentage of sales. Moore Printing & Mailing offers the same services (primarily business forms) as defendant's other business, Moore Business Forms & Systems. In fact, when the listed number for Moore Printing & Mailing is dialed, there is a recording by South Central Bell which indicates that the number has been changed. This new number is the same phone number for Moore Business Forms & Systems.

Several invoices and business cards have been attributed to defendant. One invoice, sent to Ivan Smith Furniture Company, indicates that it was sent from Marv's Business Forms & Systems, but also has the notation "AKA Moore Business Forms & Systems," in the upper right-hand corner. Another invoice sent to the Northwest Louisiana Vo-Tech School indicates that remittance should be made to "Moore Business Forms & Systems" at 3201 Knight Street, Shreveport, LA (defendant). Defendant's business card bears the inscription "Moore Business Forms & Systems, Inc." The defendant answers his phone "The Moore Company" or "The More Company."

## III CLAIMS IN CONTENTION

Plaintiff has three contentions. First, plaintiff contends that defendant's use of the names "Moore" and "More" infringes

upon plaintiff's registered trademark in contravention of 15 U.S.C. § 1114:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided....

Second, plaintiff contends that defendant's use of "Moore Business Forms & Systems" and "Moore Printing & Mailing" constitutes unfair competition or trade dress violation since it misrepresents the plaintiff as the origin of goods rather than the defendant. The governing statute is 15 U.S.C. § 1125, which provides, in pertinent part:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

Third, plaintiff alleges a violation of Louisiana's Trademarks and Tradenames Statute, La.R.S. 51:223.1. This statute provides, in pertinent part:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Plaintiff seeks a preliminary injunction and specifically requests an order enjoining defendant from using the name "Moore" or "More" in any form, that the infringing products be destroyed pursuant to 15 U.S.C. § 1118, that an intercept operator be set up, and that defendant take steps to remove the infringing name from the next issue of the telephone directory.

## IV INJUNCTION

In order to secure a preliminary injunction, plaintiff has the burden of proving four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest." *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 471 (5th Cir.1985) (*citing Apple Barrel Productions, Inc. v. Beard,* 730 F.2d 384, 386 (5th Cir.1984)).

## V SUCCESS ON THE MERITS/SUBSTANCE OF LAW

### A. INFRINGEMENT

A cause of action for the infringement of a registered trademark in violation of 15 U.S.C. § 1114 "exists where a person uses (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1009–10 (5th Cir.1975). The "essential question" in a claim of trademark infringement is the "likelihood of confusion" concerning the identify or association between plaintiff and Moore Business Forms & Systems or Moore Printing & Mailing due to their common use of the name "Moore Business Forms...." *See Sun Banks of Florida v. Sun Federal Savings & Loan Assn.*, 651 F.2d 311, 314 (5th Cir.1981).

Plaintiff has established the first four elements of a cause of action under 15 U.S.C. § 1114(1). Plaintiff has proven the existence of a registered trademark and service mark for the name "Moore." Defendant's use of the trade name/trademark/service mark "Moore" is without plaintiff's consent since defendant refused to comply with a "cease and desist" letter sent to him by plaintiff. (Affidavit of Laurence B. Oppenheimer.) The use of the name "Moore" is made in commerce as the defendant has used this designation as a means to sell products to customers in the Shreveport area. The use of the name "Moore" is made in connection with goods and services. Not only has the defendant used this designation as a means to sell various types of business forms to customers in the Shreveport area (affidavits of Ann James, Frank Orton and Carol Terry), but "the law is settled that a trademark can be infringed by the use of a mark solely as the tradename of another." *Exxon Corporation v. Humble Exploration*

*Company*, 524 F.Supp. 450, 458 (N.D.Tex. 1981).

The final element—likelihood of confusion—is established by an "amalgam of factors." *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186, 189 (5th Cir.1981). These factors include: "type of service mark, similarity of design, similarity of service, identity of service facilities and customers, similarity of advertising media used, defendant's intent and actual confusion." *Sun Banks*, 651 F.2d at 314; *Amstar Corporation v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir.1980).

### 1. Type of Trademark

The first factor to consider is whether "Moore" is a "strong" or a "weak" mark. Trademark strength may be generally defined although the "concept of trademark strength and weakness is, at best, amorphous and not susceptible of easy definition." R. Callmann, *The Law of Unfair Competition Trademarks and Monopolies* § 20.43 at 261 (4th ed. 1983). "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties. In short, the more distinctive a trademark, the greater its 'strength.'" *Exxon Corporation v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir.1980). In a suit based on infringement, there is no distinction between the various forms of marks, *e.g.*, a trademark, a service mark, or a business name (trade name). Callmann, *supra* § 21.08 at 27.

Under the applicable jurisprudence, there are four categories of marks: A strong mark is usually fictitious, arbitrary or fanciful and is generally inherently distinctive. It is afforded the widest ambit of protection. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d at 259, *quoting* Lunsford, *Trademark Basics*, 59 Trademark Rep. 873, 878 (1969). A descriptive mark tells something about the product; it is protected

only when secondary meaning is shown. *See Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506 (2d Cir.1969). *But see Hesmer Foods, Inc. v. Campbell Soup Company*, 346 F.2d 356 (7th Cir.), *cert. denied*, 382 U.S. 839, 86 S.Ct. 89, 15 L.Ed.2d 81 (1965) (barbecue beans used as a description, not as a trademark). In contrast to the above is the suggestive mark, which subtly connotes something about the service or product. Although less distinctive than a fictitious, arbitrary or fanciful mark and therefore a comparatively weak, mark, a suggestive mark will be protected without proof of secondary meaning. *See Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir.1980) ("if used as a trademark for refrigerators, the term 'Penguin' would be suggestive.") Lastly, there are generic terms, which communicate "information about the nature or class of an article or service," *America Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 11 (5th Cir.1974), and therefore can never become a service or trademark.

*Sun Banks*, 651 F.2d at 315.

The mark at issue in this case is a common English surname, "Moore." As such, it does not easily fit into the traditional pigeonholes outlined by the *Sun Banks* court above. A trademark infringement case involving a firm name involves special considerations:

> In an infringement case, a firm name is to be treated as a composite trademark of which the name of an individual is a part. An individual name is rather similar to a descriptive word, in the sense that it might properly be regarded as a convenient description of the fact that the named individual is or was affiliated with the firm. Its scope of protection will therefore be as variable as that which is afforded to the descriptive words. No protection will be available if the name is merely descriptive; it may, however, enjoy the greatest scope of pro-

tection if its primary meaning is less significant than the secondary meaning. A name that has acquired a secondary significance, however descriptive it may once have been, constitutes one of the most valuable and potent marks in trade.

Callmann, *supra*, § 21.36 at 145–46.

 This court determines that "Moore" is a strong mark. This determination is made on the basis of the strong secondary meaning which has attached to the name "Moore" in connection with the sale of business forms and machinery. The concept of "secondary meaning" was first developed as part of the common-law of trademarks. It has been described as follows:

> [D]escriptive terms, geographical place names, and family surnames are not inherently distinctive and do not alone identify any particular company's product. They were not protected as trademarks unless they had acquired distinctiveness through extensive use by a single supplier, so that the public would recognize them as identifying the source of the product. This consumer identification is known as "secondary meaning."

*Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702 (5th Cir.1981). Plaintiff has been engaged in business in the United States for over 100 years. It has over 1 million customers in the United States, and has invested substantial sums of money in advertising to promote the recognition of its name in the business community. Through the passage of time and the expenditure of dollars, "Moore" has come to mean to business forms what "Campbell" means to soup, "Mrs. Paul" means to frozen fish and what "Scott" means to paper towels. Campbell, Paul and Scott are all common American surnames, but through their ready identification with soup, frozen fish, and paper towels, respectively, a newcomer cannot use these names to sell the same type of goods without running afoul of the prohibition against trademark infringement.

The fact that other business concerns may use the name "Campbell," or "Paul," or "Scott" on other types of products does not diminish the amount of protection which these names have earned for soup, fish and paper towels. "The third-party uses and registrations ... merely limit the protection to be accorded plaintiff's mark outside the uses to which plaintiff has already put its mark." *Amstar,* 615 F.2d at 260. Both plaintiff and defendant are engaged in substantially the same business: the marketing of business forms. Thus, the mark "Moore" will be protected within this sphere against defendant's use of the same name, even though the mark "Moore" may not be entitled to such strong protection in another type of market.

2. Similarity of Design

Similarity of design is "determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Sun Banks,* 651 F.2d 317–18 (citing *Restatement of Torts* § 729, Comment B (1938)). This factor has also been described as "really nothing more than a subjective eyeball test." *Texas Motor Exchange,* 628 F.2d at 504 (quoting 2 J. McCarthy, *Trademarks and Unfair Competition* § 237:7 (1973)). Absolute identity is not required in order to establish an infringement under 15 U.S.C. § 1114. *See Humble Exploration,* 524 F.Supp. at 460. The mark "Moore" and all of its legitimate variants, Moore Business Forms, Inc., Moore Business Systems, Moore Business Centers, all subsidiaries of the parent corporation, Moore Corporation Ltd., are very similar on their face. Given the strong secondary meaning of the "Moore" mark, there is little or no distinction between the legitimate variants of the "Moore" mark and defendant's Moore Business Forms & Systems.

At the hearing, defendant informed the court that he would agree not to use the name "Moore" but that he wanted to continue to do business as "The More Company." This change in spelling is not enough to alter the fundamental similarity, and potential confusion, between plaintiff's mark and defendant's trade name. One noted commentator has remarked:

Word marks may appeal to the eye, the ear or the mind; thus, there may be similarities of appearance, sound or meaning between them. If such similarity creates a probability of confusion, infringement can be found. Similarity in itself, however, is not the test. Whether the similarity is likely to provoke confusion is the crucial question. On the other hand, mere dissimilarity in one or more of these respects will not, by itself, negate the probability of confusion.

Callmann, *supra,* § 20.13 at 67. The dissimilarity between the spelling of M–O–O–R–E and M–O–R–E does not change the potential for confusion between the two names. The two words are phonetically identical and, in this case, "misspelling does not absolve the offender where there is similarity in ... sound...." *Id.* This phonetic similarity is especially important when the competitors in the market rely on phone orders as do plaintiff and defendant:

Confusion, attributable to similarity in pronunciation is minimized when the product is purchased in self-service departments and not by requests of sales clerks. Conversely, similarity in sound is of special significance where the goods are sold by name over the counter, advertised over the radio or ordered by telephone.

Callman, *supra,* § 20.13 at 68.

3. Similarity of Products

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Texas Motor Exchange,* 628 F.2d at 505. In this case, there is a complete identity of products. Both plaintiff and defendant offer business forms to the Shreveport market. In fact, at the hearing defendant acknowledged the similarity in products and the fact that he was in direct competition with plaintiff.

### 4. Identity of Retail Outlets

"Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception." *Id.* (*citing Amstar Corp.,* 615 F.2d at 252). In the instant case, there is a striking similarity in the advertising media used by the two parties. Both rely upon listings in the local phone directory to generate sales. The defendant is listed immediately below the plaintiff in the local phone directory. Defendant, the newcomer to the market, is located on the same street within a few blocks of the plaintiff. This striking similarity in phone directory advertising has been a direct cause of confusion to plaintiff's customers. (*See* affidavits of Ann James and Carol Terry.) At the hearing, Carol Terry testified that based upon the listings in the telephone directory, she "assumed that one was a division of the other." The importance of the phone orders was shown by the testimony of Sam Flood, plaintiff's district sales manager. He testified that 80 per cent of plaintiff's business is "repeat business." These repeat customers, like Carol Terry who testified that she has used plaintiff's products for over seven years, typically pick up the phone book and reorder by calling one of plaintiff's salesmen.

### 5. Defendant's Intent

"That a latecomer adopts another's name or mark, deliberately seeking to capitalize on the other's reputation and benefit from the confusion, is an important factor for any court." *Sun Banks,* 651 F.2d at 318–19. In fact, "[e]vidence of intentional deception carries special weight in the calculus of determining likelihood of confusion. Indeed, proof that a defendant chose a mark with the intent of copying plaintiff's mark, standing alone, may justify an inference of confusing similarity, *Exxon,* 628 F.2d at 506; *Amstar Corp.,* 615 F.2d at 263." *Sun-Fun Products,* 656 F.2d at 190. This court finds that there was an intent on the part of the defendant to cause confusion and thereby cash in on the good will of

plaintiff's name. Defendant has done nothing to distinguish itself from the plaintiff when Shreveport customers have contacted defendant and indicated verbally that they believed they were dealing with plaintiff. (*See* affidavit of Ann James.) In fact, defendant has taken affirmative actions to ensure that business customers in Shreveport would be deceived into believing that defendant and plaintiff were one and the same company. On one occasion, a representative of defendant informed Carol Terry, one of plaintiff's customers, that her "file must have been lost in [defendant's] recent move." Defendant's representative also told Miss Terry that one of plaintiff's current salesmen, Bill Babers, no longer works for Moore. (*See also* affidavit of Frank Orton.) These statements were made to create the illusion that the defendant was the "Moore Company" with which these customers had been dealing for a number of years.

The finding that defendant intended to create the impression that he was connected to plaintiff is bolstered by defendant's own testimony. Defendant testified that he first knew of the existence of plaintiff in 1966. He did not, however, assume the name "Moore" in his own business dealings until August 1984. Defendant admits that when he decided to use the name "Moore," he was informed by two different individuals, James S. Noel and B.J. Woods, that there might be a problem with the use of that name but that defendant "probably could get away with" or "most likely could use" that name. Defendant did not seek out an attorney's advice, but rather admits that he has obtained business by trading off of plaintiff's good will.

### 6. Actual Confusion

The final factor to consider is actual confusion. "The best evidence of likelihood of confusion is provided by evidence of actual confusion." *Texas Motor Exchange,* 628 F.2d at 506 (*citing Roto-Rooter Corp. v. O'Neal,* 513 F.2d 44 (5th Cir. 1975)). "In determining the likelihood of confusion, however, a court must consider all of the evidence, including countervailing

circumstances which lessen the impact of asserted instances of confusion." *Sun Banks*, 651 F.2d at 319. Plaintiff has outlined a number of instances of actual confusion in which numerous individuals and companies have mistaken defendant for plaintiff. Ann James and Carol Terry, two long-term customers of plaintiff, both phoned defendant with the mistaken impression that they were phoning plaintiff, in order to make a purchase with plaintiff. Plaintiff's district manager, Sam Flood, testified that he and his receptionist have received many calls from customers who have been confused by the similarity in name between plaintiff and defendant. Both the post office and UPS have confused plaintiff and defendant.

■ Weighing all of the factors which Fifth Circuit jurisprudence requires to be considered, this court finds that there is a strong likelihood of confusion, if not actual confusion, which justifies injunctive relief to prevent further violations of 15 U.S.C. § 1114.

### B. TRADE DRESS/UNFAIR COMPETITION

■ Plaintiff also seeks relief on the grounds that defendant's use of the mark "Moore" or "More" constitutes a misrepresentation of origin in violation of 15 U.S.C. § 1125. "Section 1125(a) does not specifically create a cause of action for trademark and trade name infringement. Instead, it is broadly worded to describe (1) the use of words or symbols (2) tending to falsely describe or represent (3) the source of origin (4) of goods or services (5) in commerce." *Humble*, 524 F.Supp. at 456. When a trademark used by the plaintiff is so associated with its products, the use of the same mark by another company constitutes a representation that its goods come from the same source. *Id.* at 457; *Boston Professional Hockey Association*, 510 F.2d at 1010. Like claims of trademark infringement, the basic test for claims under 15 U.S.C. § 1125 is the likelihood of confusion. *Chevron*, 659 F.2d at 703; *Amstar*, 615 F.2d at 258. Once a finding of confu-

sion is made under § 1114, a finding of false representation of origin is made under § 1125. *Boston Pro Hockey Assn.*, 510 F.2d at 1013. This court has found a likelihood of confusion under plaintiff's infringement claim and, likewise, finds a likelihood of confusion under plaintiff's trade dress/unfair competition claim. The use of the name "Moore" or "More" by defendant is likely to create the false impression that the goods sold originate with plaintiff rather than some other supplier. As such, plaintiff is entitled to injunctive relief under 15 U.S.C. § 1125(a).

### C. STATE LAW CLAIMS

■ Plaintiff's state law claim does not merit lengthy consideration. The injunction entered against defendant "as a result of its violation of [the Lanham Trademark Act] will be at least as broad as any that could be justified under [state] law." *Chevron*, 659 F.2d at 706. Plaintiff would be entitled to no greater relief under Louisiana law. Consequently, this court will not address the *res nova* issue of the interpretation of the recently-enacted La.R.S. 51:2231.

### VI IRREPARABLE INJURY

■ Trademark and trade dress infringement cases involve a unique threat of irreparable injury. "Because plaintiff may not control the quality of defendant's goods [plaintiff] has lost and faces future losses of its own reputation and good will. This loss of control ... constitutes immediate, irreparable harm." *American Rice, Inc. v. Arkansas Rice Growers Cooperative*, 532 F.Supp. 1376, 1389 (S.D.Tex.1982).

Sam Flood testified that defendant's activities had interrupted plaintiff's sales system by breaking the cycle of repeat, quality service provided by Moore which in turn generates repeat requests for additional Moore products. When defendant has provided goods to plaintiff's customers, ill will has been created when (1) plaintiff's customers realized that they were not dealing with the right party, and (2) when the products were more expensive.

## VII THREAT OF HARM TO PLAINTIFF GREATER THAN THREAT OF HARM TO DEFENDANT

■ Given that plaintiff has been in business for over 100 years and has a strong reputation in the community, the threat of injury to plaintiff is greater than that to defendant who is a late-comer to the market and whose products have not been heavily promoted. *See American Rice,* 532 F.Supp. at 1389.

## VIII NOT ADVERSE TO PUBLIC INTEREST

■ An injunction in trademark infringement and trade dress/unfair competition cases is not adverse to the public interest. The Fifth Circuit has recently noted: "the trademark laws exist not to 'protect' trademarks but ... to protect the consuming public from confusion, concomitantly protecting the trademark owner's rights to a nonconfused public.... By ensuring correct information in the market place, the laws reduce losses caused by misunderstanding and deceit and thus permit consumers and merchants to maximize their own welfare confident that the information presented is truthful." *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.,* 725 F.2d 336, 348 (5th Cir.1984).

■ Having determined that plaintiff has met each requirement for the issuance of an injunction, this court now considers the scope of the relief to which plaintiff is entitled. The Fifth Circuit has recently noted that in unfair competition cases or cases involving trademark infringement, the district court should fashion relief broad enough to protect the plaintiff's interests:

> [A] competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves.

*Chevron,* 659 F.2d at 705 (*citing Broderick & Bascom Rope Co. v. Manoff,* 41 F.2d 353, 354 (6th Cir.1930).)

In order to keep Marvin Seidenburg "away from the margin line," this court will allow plaintiff its requested relief in its entirety.

An Order consistent with the terms of this Memorandum Ruling shall issue herewith.

## ORDER

Based upon the reasons expressed in the foregoing Memorandum Ruling,

IT IS ORDERED that defendant Marvin Seidenburg, and all those in active concert and participation with him who receive notice, refrain from using the trade name, trademark, service mark, or trade designation "Moore Business Forms & Systems," "Moore Business Forms," "Moore Business Systems," "Moore Printing & Mailing, Inc.," "The Moore Company," "The More Company," and "Moore" or "More" in any form, in association with the solicitation, marketing, or sales of business forms, paper, envelopes, sales books, or any like products.

IT IS FURTHER ORDERED that all invoices, business cards, stationery, or any other documents, in the possession of defendant or anyone in active concert with him who receives notice, which use the words "Moore" or "More" be delivered up to plaintiff and destroyed.

IT IS FURTHER ORDERED that an intercept operator be set up at defendant's expense, to answer defendant's telephone numbers 318/865–5207 and 318/222–9229 to advise all callers that if it was their intention to reach Moore Business Forms, Inc., they have reached the wrong party and that the correct number for Moore Business Forms, Inc. in Shreveport is 318/868–3615.

IT IS FURTHER ORDERED that defendant advise the appropriate company in Shreveport, Louisiana, to refrain from listing "Moore Business Forms & Systems," "Moore Printing & Mailing, Inc.," "The More Company," or any business containing the words "Moore" or "More" in any

form, in the next issuance of the Shreveport-Bossier City telephone directory.