**ACME REFRIGERATION SUPPLIES INC.,**

v.

**ACME REFRIGERATION OF BATON ROUGE INC.**

Civil Action No. 95–3169.

United States District Court, E.D. Louisiana.

Nov. 14, 1996.

Stephen G. Bullock, Joseph Leo Caverly, Thomas M. Flanagan, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., New Orleans, for Plaintiff.

Larry Gene Canada, Ivan Mauricio Rodriguez, Galloway, Johnson, Tompkins & Burr, New Orleans, Russel Oliver Primeaux, Roy,

Kiesel & Tucker, Baton Rouge, Deirdre Alton Cherry, New Orleans, for Defendant.

## ORDER AND REASONS

FALLON, District Judge.

Before this Court is plaintiff's motion for a preliminary injunction.[1] For the following reasons, the plaintiff's motion for a preliminary injunction is GRANTED and the defendant is enjoined from using the tradename "Acme Refrigeration" in Orleans, Jefferson, St. Bernard, St. Charles, Plaquemine, Terrebonne, and Lafourche parishes.

## BACKGROUND

Acme Refrigeration Supplies (hereinafter Acme Refrigeration) began doing business in New Orleans in 1946. Its initial market area was in the parishes of Orleans, Jefferson, and St. Bernard, but it gradually expanded into the parishes of Lafourche, Terrebonne, St John the Baptist, and St Charles. Acme Refrigeration entered the Baton Rouge marketplace in 1950, but in order not to create confusion with Acme Refrigeration of Baton Rouge (hereinafter Acme Baton Rouge) opened its business under the name Atlas Refrigeration Supplies, Inc.

Acme Baton Rouge begin its business in Baton Rouge in 1945. In January of 1994, Acme Baton Rouge opened a store in Jefferson Parish under the name of Acme Refrigeration of Jefferson. Jefferson Parish is within the New Orleans marketplace. Prior to opening this store, Acme Baton Rouge had done business in the New Orleans area, but this business did not rise to a substantive level.

Acme Refrigeration filed the instant suit for tradename-infringement under both the Lanham Act and Louisiana state law[2] after Acme Baton Rouge had open its store in Jefferson contending that the similar names between the two business created confusion among consumers. Acme Baton Rouge filed a counter-claim against Acme Refrigeration

---

1. The preliminary is sought for the market encompassing eight parishes (Orleans, Jefferson, St. Bernard, St. Charles, Plaquemine, Terrebonne, and Lafourche parishes).

2. See 15 U.S.C. §§ 1051, 1052, 1114, 1125, 1127 (West 1996), La. R.S. 51:223.1 (West 1987), La. R.S. 51:1401–1418 (West 1987), and La. C.C art. 2315 (West 1987).

for tradename-infringement arising under the same laws raising the same arguments.

## *LEGAL STANDARD*

A preliminary injunction may be issued by this Court under Fed.R.Civ.P. 65 if the plaintiff establishes four criteria: 1) a substantial likelihood of success on the merits, 2) irreparable harm, 3) a favorable balance of hardships, and 4) no adverse effect on the public interest. *Black Fire Fighters Ass'n v. Dallas*, 905 F.2d 63, 65 (5th Cir.1990).

### A. Likelihood of success on the merits

The first criteria the likelihood of success on the merits is intertwined with the issue of confusion between trademarks. Confusion is synonymous with trademark infringement and the presence of a trademark infringement would indicate a substantial likelihood of success on the merits. *Marathon Mfg. Co. v. Enerlite Prod. Corp.*, 767 F.2d 214, 217 (5th Cir.1985). Thus, if confusion between trademarks exists the first criteria for a preliminary injunction is met.

*Armco Inc. v. Armco Burglar Alarm Inc.*, 693 F.2d 1155, 1159 (5th Cir.1982) outlines several factors to consider to determine if confusion between trademarks is present. These include: 1) degree of similarity between the two marks; 2) similarity between the two products; 3) identity of retailed outlets and purchasers; 4) actual confusion. There is confusion when all four of these factors are present. Confusion exists, however, only when one trademark user makes use of a trademark that is confusingly similar to another user's trademark and when this use occurs within the territory already occupied by the first user. *Union National Bank of Texas, Laredo, Texas v. Union National Bank of Texas, Austin, Texas*, 909 F.2d 839 (5th Cir.1990).

Courts have carved out two possible geographic areas in which a trademark user can operate. These two areas are zone of market penetration and zone of natural expansion.[3] Presence of one trademark user in one of these areas justifies protection of that user from another later user employing the same trademark in the same geographic area.

A zone of actual market penetration embraces the area in which trademarked goods or services are vended. To determine if a trademark user occupies a zone of actual market penetration it is helpful to consider the following factors 1) volume of sales of the trademarked product, 2) growth of sales, and 3) passage of time since there were significant sales. *Natural Footwear Ltd. v. Hart, Schaffner, & Marx*, 760 F.2d 1383 (3rd Cir. 1985).

The second geographic area that warrants protection is the zone of natural expansion. This is a fictitious zone and includes the areas in which the trademark owner has the potential to expand. Trademark infringement, however, can only occur in this area if it was foreseeable for the first user to reasonably expand into the area at the time the second user began using the trademark in that area. 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 26.8 at 308 (2d.1984). Courts have looked at several factors to determine if it was sensible for a trademark user to expand into an area at the time the second user began using the trademark in that area. These factors include 1) the first user's previous expansion in the area, 2) first user's previous business activity in the area, and 3) first user's dominance of contiguous area. *Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512 (Cust.&Pat.App.1980).

Therefore, if the plaintiff in the instant matter can show that he was in a geographic area before the defendant (either a zone of market penetration or zone of natural expansion) and confusion exists between his and the defendant's trademark then the first requirement of issuing a preliminary injunction is satisfied.

### B. Irreparable Harm

If one trademark user cannot control the quality of the other trademark user's

---

3. See generally William Jay Gross, *Territorial Scope of Trademark Rights*, 44 U. Miami L. Rev 1075 (1990) and 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 26.01(4) at 26–9 (3d ed.1992).

goods and services, he can suffer irreparable harm. *Pro Hardware Inc., v. Home Centers of America, Inc.*, 607 F.Supp. 146, 154 (S.D.Tex.1984). This type of irreparable harm can be measured by loss of goodwill and damage to reputation. Both of these factors can be traced to loss of control over the alleged trademark infringer's products. This loss of control constitutes immediate irreparable harm. *Moore Business Forms, Inc. v. Seidenburg*, 619 F.Supp. 1173, 1184 (W.D.La.1985).

## C. Favorable Balance of Hardships

■ The third criteria needed for a preliminary injunction is a favorable balance of hardships. *Black Fire Fighters Ass'n*, 905 F.2d at 65. This requires the plaintiff to establish that his irreparable harm is greater than the hardship that the preliminary injunction would cause the defendant. *X. Corp. v. Doe*, 805 F.Supp. 1298 (E.D.Va.1992) *aff'g* 17 F.3d 1435 (4th Cir.1994).

## D. Adverse Effect on the Public Interest

A fourth criteria is that the injunction will have no adverse effect on the public interest. *Black Fire Fighters Ass'n*, 905 F.2d at 65.

## *ANALYSIS*

### A. Likelihood of Success on the Merits

The territory being disputed between the plaintiff and defendant in the instant matter is an eight parish area surrounding New Orleans. Thus, the question is does the eight parish area fall into one of the two zones of protection outlined above and if so was the plaintiff or defendant there first. If this situation exists then a likelihood of confusion between the plaintiff's and defendant's trademark should be examined to determine if a likelihood of success on the merits at trial is likely.

4. See Plaintiff's Memorandum in Support for Preliminary Injunction Exhibit A–1.

5. See Defendant's Memorandum in Opposition to Preliminary Injunction Exhibit C.

6. See Defendant's Memorandum in Opposition to Preliminary Injunction Exhibit B.

### I. Market Zones

### a. Zone of Market Penetration

■ The first zone of protection to consider is the zone of market penetration. When deciding if this zone exists and for whose benefit it exists it is proper to look at 1) the volume of sales of the trademarked product, 2) the growth of sales, and 3) the passage of time since significant sales.

The plaintiff has submitted evidence showing sales of $1,699,247 in 1972.[4] This indicates as early as 1972, the plaintiff had established significant sales in the disputed area. The defendant has submitted evidence to show sales totaling $335, 970 in 1993.[5] The record reveals that the defendant began doing business in the disputed area in 1970, but evidence indicates that it was not economically feasible to open a branch location in the disputed area.[6] The plaintiff on the other hand has submitted additional data that it began doing business in the contested area in 1946 (serving Orleans Parish) and its volume of sales was such to support branch locations in Harvey in the late 1950's (serving Jefferson Parish), in Houma in 1976 (serving Lafourche, Terrebonne, Plaquemine and Jefferson Parishes), and in LaPlace in 1981 (serving St. John the Baptist and St. Charles Parishes).[7]

The above facts demonstrate the plaintiff's volume of sales are greater than the defendant's and its growth of sales from 1945 to the present have outdistanced the defendant's sales growth in the challenged area for the same time period. Thus, the disputed area exists as a zone of market penetration. It exists for the benefit of the plaintiff since the plaintiff began using the trademark in 1945 while the defendant's first use of the disputed trademark in the contested area was 1970.[8]

7. See Plaintiff's Memorandum in Support of Preliminary Injunction Exhibit A.

8. Since neither party contest that they are conducting sales in the area at the present time, the factor of passage of time since there was significant sales will not be analyzed.

### b. Zone of Natural Expansion

■ The defendant has based his resistance to the preliminary injunction on the grounds that the disputed area is in his zone of natural expansion and he was present in this zone before the plaintiff. Therefore, he argues that he has the right to use his trademark in the contested area.

In order for the disputed area to be in the defendant's zone of natural expansion it must be foreseeable that he would reasonably expand into the area at the time the plaintiff entered the area. For it to be reasonably foreseeable for the defendant to expand in the disputed area at the time the plaintiff began doing business in the area it is instructive to examine three factors 1) the defendant's previous expansion in the disputed area, 2) his previous business activity in the disputed area, and 3) his dominance of the contiguous area. All three factors should be examined at the time the plaintiff began doing business in the area namely, 1946.

The evidence submitted to this Court indicates the defendant had not expanded into the disputed area in 1946, the year the plaintiff entered the disputed area. Also absent is an indication that the defendant had done any business in the disputed area prior to the plaintiff entering the contested area in 1946. Finally, while the defendant submits evidence it is now doing business in the contiguous area, it does not claim its current business dominates the contiguous area now or dominated it in 1946. Thus, the defendant's argument that the disputed area is in its zone of natural expansion is without merit.

■ The defendant also offers the proposition that the entire state is its zone of market penetration and since it preceded the plaintiff by one year in this market it should not be enjoined from using its trademark in the contested area.[9] The defendant in his attempt to lay claim to the state of Louisiana as his protected marketplace contrasted the facts of the instant case with the facts of *Louisiana State Optical of Jefferson Parish,*

*Inc. v. Louisiana State Optical of Kenner, Inc.,* 469 So.2d 994 (La.App. 5th Cir.1985) which rejected the notion that the entire state is a single trading area. In *Louisiana,* there was a third party intervenor as well as the plaintiff and defendant claiming the disputed trademark and in the present case there are only the plaintiff and defendant using the disputed trademark. This difference is not enough to persuade this Court to disregard the ruling in *Louisiana.* Thus, the entire state cannot be one market or trade area for the defendant's benefit.

### II. Presence of Confusion Between Trademarks

Once a trademark user establishes a zone of market penetration exists for his protection, several factors must be examined to determine whether confusion exists between his trademark and the alleged infringing trademark.

### a. Degree of Similarity Between the Two Marks

■ Plaintiff's trademark is Acme Refrigeration and the defendant's trademark is Acme Refrigeration of Jefferson. Defendant suggests that the presence of a blue snowflake design on its advertising and correspondence is enough to distinguish the almost identical name it shares with the plaintiff. For confusion to be present, however, only substantial similarity rather than total similarity between the trademarks needs to exists. Similarity of appearance is determined on the total basis of the trademark rather than by a comparison of individual factors in the trademark. *Marathon Mfg. Co. v. Enerlite Prod. Corp.,* 767 F.2d 214 (5th Cir.1985) Both businesses share the same name and the presence of a blue snowflake design in one of the trademarks, does not defeat the high degree of similarity between them.

### b. Similarity between the two products

Plaintiff has presented evidence that its products and the defendant's products share

---

9. While Justice Holmes in dicta found in *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 426, 36 S.Ct. 357, 365, 60 L.Ed. 713 (1916) (Holmes, J., concurring) indicated the use of a trademark in one part of the state creates rights throughout the state, the majority of courts including the Fifth Circuit have not followed this dicta and have held that separate trade area may exist within state boundary lines.

a great deal of similarity.[10] The defendant has not denied that it sells products similar to the plaintiff's but argues that it sells one type of product, a Scotsman ice machine, in the disputed area that the plaintiff does not sell. The issue at hand, however, is not the retail market in the disputed area for Scotsman ice machines, but the retail market for air-conditioning supplies that both the plaintiff and the defendant sell in the disputed market area. Thus, the two businesses offer similar products in the disputed marketplace.

### c. Identity of retailed outlets and purchasers

This factor refers to the customer bases of the parties. The plaintiff and defendant sell similar products in the same geographic area. They have mutual customers since they both sell to contractors in need of air-conditioning supplies. Accordingly, the defendant and the plaintiff share a similar customer base.

### d. Actual confusion.

■ Plaintiff has submitted numerous affidavits asserting that confusion exists between its trademark and the defendant's trademark. These affidavits indicate actual confusion among the plaintiff's customers.[11] In addition, defendant's personnel indicate that they have at times encountered confusion in the marketplace between the two businesses.[12]

Defendant tries to defeat the plaintiff's evidence by arguing that any instance of past confusion has been cured. Additionally, it states without supporting evidence that no confusion exists within the marketplace. This is insufficient to rebut the plaintiff's evidence.

The plaintiff, by evidence, has established that a likelihood of confusion exists by demonstrating (1) a similarity between its trademark and the defendant's, (2) a similarity of products the two businesses sell, (3) the same customer base, and (4) instances of actual confusion in the marketplace between it and the defendant. Since the disputed area is in the plaintiff's zone of market penetration and confusion exists between it and the defendant, the first criteria for obtaining a preliminary injunction, namely, likelihood of success on the merits has been satisfied.

### B. Irreparable Harm

■ In the instant case the plaintiff has spent fifty years building up goodwill and a reputation in the disputed marketplace. He has no control over the quality of goods of a retailer who has been in the disputed area for only a comparatively short time and stands to be permanently damaged. Thus, irreparable harm is present.

### C. Balance of Hardships

■ Granting of a preliminary injunction would harm the defendant by ordering cessation of operation at its only branch store in the disputed area and requiring it to change the name of that store. The defendant, however, would have the revenue from its main store in Baton Rouge. On the other hand, failure to grant the preliminary injunction would ensure continued interference with the plaintiff's livelihood. Plaintiff garners almost all of his revenues from the disputed area. Unlike the defendant, he has no main store outside the disputed marketplace to rely on for revenues. Thus, the balance of hardships to the plaintiff in not granting the preliminary injunction significantly outweigh the hardships the defendant would suffer if the preliminary injunction was granted.

### D. Adverse Effect on the Public Interest

Granting of a preliminary injunction would ensure compliance with both state and federal laws. Any time that a state or federal law is enforced the public interest is served. Therefore, granting the defendant's motion for a preliminary injunction would not have an adverse effect on the public interest.

10. See Plaintiff's Memorandum in Support of Motion for Preliminary Injunction Exhibit G.

11. See Plaintiff's Fourth Motion for Leave to Submit Additional Evidence of Actual Confusion In Support of Motion for Preliminary Injunction Exhibits MM, NN, & OO.

12. See Plaintiff's Motion in Support of Preliminary Injunction Exhibit G and Exhibit P.

## CONCLUSION

For the forgoing reasons, the Court finds that the plaintiff has satisfied the four criteria for issuance of a preliminary injunction

Therefore, the plaintiff's motion for a preliminary injunction is GRANTED and the defendant is enjoined from using the tradename "Acme Refrigeration" in Orleans, Jefferson, St. Bernard, St. Charles, Plaquemine, Terrebonne, and Lafourche parishes.